**Mary GEIGER, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 92–48.**

Supreme Court of Wyoming.

Sept. 21, 1993.

Leonard D. Munker, State Public Defender and Deborah Cornia, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mary Beth Wolff, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

Mary Geiger (Geiger) appeals from a conviction of attempted first-degree murder and a sentence of life in the Wyoming Women's Center. Geiger asserts that the trial court violated the Wyoming Rules of Evidence by admitting irrelevant and prejudicial testimony, and argues there was insufficient evidence to convict her of attempted first-degree murder. We affirm Geiger's conviction and sentence.

Geiger presents these issues:

ISSUE I

WHETHER IRRELEVANT, INFLAMMATORY AND PREJUDICIAL TESTIMONY ELICITED BY THE PROSECUTION IN VIOLATION OF W.R.E. 401 AND 403 REQUIRES REVERSAL OF THIS CASE.

A. Reversible error occurred with the admission of testimony concerning the impact of the crime on the victim.

B. Reversible error occurred with the admission of a 911 tape and other irrelevant testimony of the victim's wife[.]

C. Reversible error occurred with the admission of irrelevant testimony of Dr. Vigneri[.]

ISSUE II

WHETHER THE EVIDENCE IS SUFFICIENT TO SUSTAIN A CONVICTION FOR ATTEMPTED FIRST–DEGREE MURDER.

## I. FACTS

On August 12, 1991, after visiting several area taverns, Geiger entered the Loft Lounge (Loft) in Evansville, Wyoming. Ernest Romero (Romero) and a friend were shooting pool at the Loft. Romero and Geiger knew one another, having previously engaged in heated arguments at other drinking establishments in nearby Casper, Wyoming.

When Geiger entered the Loft, she and Romero renewed their acrimonious relationship. Geiger claimed that she tried to join the pool game, while Romero asserted that Geiger interrupted his pool game and grabbed his hat. Romero approached Geiger and retrieved the hat, after which Geiger said Romero shoved her and threatened "to mess [her] face up." Romero, however, declared that after he retrieved his hat, Geiger hit him in the back of the head with a cue ball. The altercation continued until the bartender intervened and Geiger departed.

After leaving the Loft, Geiger drove to her home and retrieved a pistol. She returned to the Loft "to hurt [Romero] the same way that he had threatened to hurt [her]." She observed Romero leaving the Loft and followed him home. Before Romero could exit his truck, Geiger walked up to the driver's side, announced her presence, and proceeded to fire four shots at Romero from very close range. Following the shooting, Geiger quickly departed, discarding the pistol as she fled.

Romero suffered three bullet wounds, one to the face, one to the neck and one in the shoulder, but survived. After a four-day trial, Geiger was found guilty of attempted first-degree murder and was sentenced to life in the Wyoming Women's Center.

## II. DISCUSSION

### A. *W.R.E. 401 and 403*

In her first claim of error, Geiger asserts that irrelevant and prejudicial testimony was presented to the jury, at three distinct junctures of the trial, in violation of W.R.E. 401 and 403.

W.R.E. 401 through 403 state the basis for admissibility under the Wyoming Rules of Evidence. All evidence must be relevant. W.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. In the criminal setting, "[e]vidence is always relevant if it tends to prove or disprove one of the elements of the crime charged." *Grabill v. State*, 621 P.2d 802, 809 (Wyo.1980).

■ Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice * * * [.]" W.R.E. 403. For this court to conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, Geiger "must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981).

■ Since Geiger failed to object to the admission of the alleged improper testimony, our review of this issue is limited to a search for plain error. *Russell v. State*, 851 P.2d 1274 (Wyo.1993). Geiger, as the appellant, bears the burden of demonstrating the existence of three criteria: (1) the record clearly shows what occurred at trial, (2) transgression of a clear and unequivocal rule of law, and (3) which adversely affected one of Geiger's substantial rights. *Id.* Failure to establish each element of this three-part test precludes a finding of plain error. *Id.*

■ Geiger's first instance of irrelevant and prejudicial evidence involves testimony, elicited by the prosecutor, from Romero concerning the extent and effect of his injuries. Geiger argues that our decision in *Justice v. State*, 775 P.2d 1002 (Wyo.1989) stands for the general proposition that "admitting a victim's testimony as to the impact of the crime upon him, is error," and that Romero's testimony concerning his injuries violates that principle. In holding that the victim impact testimony offered in *Justice* constituted harmless error, this court said:

It is clear that the testimony offered by the victims of this crime with respect to how it affected them in connection with their lives after the crime is absolutely irrelevant with respect to the issues before the jury. Their discussion of the impact of the crime upon them could not in any way serve to establish any of the elements of the crime of aggravated robbery.

*Id.* at 1010. The conclusion that the victim impact evidence was irrelevant was based on W.R.E. 401 and 403 as applied to the circumstances and the crime in that particular case. The court directed that victim impact testimony should not be presented "unless there is a clear justification of relevance." *Justice*, 775 P.2d at 1011.

The challenged testimony, concerning the impact of the attempted murder on Romero, consisted of his descriptions of his injuries, his feelings at the time, and his remarks concerning a potential civil action against Geiger. The testimony describing Romero's injuries was relevant and clearly justified as proof of the element of *intent to kill*. The nature of the injuries demonstrated Geiger's aim and close proximity to Romero when she fired her pistol four times. Romero's testimony concerning a possible civil action was in response to questions propounded by Geiger's defense attorney during cross-examination. While some of the individual isolated questions and answers may have been irrelevant; as a whole, the testimony was relevant and any error presented by the irrelevant victim impact testimony was harmless. *Justice*, 775 P.2d at 1011.

■ The second instance of challenged testimony occurred when the trial court permitted the State to play a recording of the "911" emergency call made by Vivian Johnson (Johnson), Romero's companion, to report the shooting. Geiger maintains that Johnson's testimony about the "911" call and the transcript of the actual telephone call were inflammatory. Upon review of this testimony, we believe it had probative value without being extremely inflammatory or unduly prejudicial. *Apodaca*, 627 P.2d at 1027.

The "911" call was a conversation between the operator and Johnson concerning the location of the crime, the extent of Romero's injuries, a description of the assailant and her car, the number of shots fired, and the direction the assailant was driving as she fled the scene. The tape was descriptive of the commission of the crime and the crime scene which is probative of how, when and where the shooting occurred. Because the State must prove

that Geiger intended to kill Romero, the almost contemporaneous description of the crime constituted relevant evidence. Although Johnson was understandably upset, as revealed by the recording, the testimony was not unduly prejudicial.

A number of other courts have analyzed the relevancy of "911" calls and concluded that their probative value outweighs any prejudice. An Illinois Appellate Court held that an edited version of a "911" call was admissible in a murder trial. The defendant admitted the crime and the sole issue was his sanity. The court held the call was probative of the commission of the crime and was probative of the defendant's sanity. *People v. Jurczak,* 147 Ill.App.3d 206, 101 Ill.Dec. 19, 26, 497 N.E.2d 1332, 1339 (1986). *See also Lynch v. State,* 588 A.2d 1138 (Del.Supr.1991) (call by five-year old child established the integrity of the murder scene) and *State v. King,* 604 So.2d 661 (La.App.1992) (edited version of a "911" call describing murder scene held probative of caller's challenged credibility).

■ The remaining testimony which Geiger finds objectionable occurred when the prosecutor elicited testimony from a doctor concerning Romero's injuries. During the doctor's testimony, the prosecutor asked several hypothetical questions concerning potential injuries from bullet wounds such as those inflicted upon Romero. The doctor explained the risk of fatality after being shot in the head and neck area. Geiger argues that these questions and answers were too speculative and thus irrelevant as well as inflammatory.

While the testimony is more lengthy and descriptive than perhaps is necessary to make the point that shooting someone in the head is likely to cause death, the trial court did not violate W.R.E. 401 and 403 by admitting this testimony. The doctor's testimony is probative of Geiger's intent and premeditation. Any prejudice—arousing the jury's sympathy—was inconsequential. The doctor's testimony also supported the jurors' examination and understanding of the photographs and x-rays of the extent and location of Romero's injuries.

Therefore, we hold that W.R.E. 401 and 403 were not plainly violated by Romero's victim impact testimony, the "911" call, or the doctor's testimony concerning Romero's wounds.

## B. *Sufficiency of the Evidence*

Geiger also argues that insufficient evidence of specific intent to kill was presented to support a conviction of attempted first-degree murder. Our standard when reviewing for sufficiency of the evidence is well settled:

> " '[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict.' " *Dangel v. State,* Wyo., 724 P.2d 1145, 1148 (1986), quoting from *Aden v. State,* Wyo., 717 P.2d 326, 327 (1986).
>
> "[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State * * *." *Broom v. State,* Wyo., 695 P.2d 640, 642 (1985) * * *.

*Roose v. State,* 759 P.2d 478, 487 (Wyo. 1988). *See also Glazier v. State,* 843 P.2d 1200, 1203 (Wyo.1992).

■ For the jury to convict Geiger of attempted first-degree murder as distinguished from second-degree murder, they had to find, beyond a reasonable doubt, that she acted with specific intent. Recently, this court concluded that "premeditation is the specific intent element which distinguishes the two types of murder." *Bouwkamp v. State,* 833 P.2d 486, 493 (Wyo.1992). Concerning premeditation, this court said:

> Premeditation, or premeditated malice, should be accorded its ordinary meaning, which has been applied in our decisions for some time. It is the "thinking over, deliberating upon, weighing in the mind beforehand, resulting in a deliberate intention to kill which constitutes the killing murder in the first degree." * * *

Premeditation may be inferred from the facts and circumstances. * * *

This court's recent discussions of premeditation have focused on the passage of time required to establish premeditation. * * * While it is true that no specific or substantial time period is required, there must be evidence of cool calculation beyond the mere *opportunity* to deliberate, such as demonstrated motive * * * or leaving an altercation to arm oneself.

*Id.* at 493–94 (quoting *Parker v. State,* 24 Wyo. 491, 502, 161 P. 552, 555 (1916)) (emphasis in original).

██ Our review of the record reveals ample evidence of premeditation. The following evidence is undisputed: (1) Geiger left the Loft after fighting with Romero and armed herself; (2) she returned to the Loft to find Romero and "hurt" him; (3) she followed Romero to his home; (4) she exited her own vehicle and walked up to Romero; (5) she aimed her loaded pistol at Romero from very close range; (6) she fired her pistol four times, hitting Romero in the face, neck and shoulder; and (7) she returned to her vehicle, fled the scene, and discarded her pistol. Based on this evidence, it is clear that the jury could have found, beyond a reasonable doubt, that Geiger's actions were premeditated. Therefore, we hold that the record demonstrated sufficient evidence to support a conviction for attempted first-degree murder.

### III. CONCLUSION

We reject Geiger's claims that plain error occurred with the admission of Romero's testimony concerning the extent of injuries he suffered, the "911" call, and the doctor's testimony explaining the potential lethal effect of Romero's wounds. We also reject Geiger's assertion that insufficient evidence existed for the jury to find that she acted with premeditation.

We affirm Geiger's conviction and sentence for attempted first-degree murder.