Robert **HERNANDEZ**, Appellant (Defendant),

v.

The **STATE** of **Wyoming**, Appellee (Plaintiff).

No. 98–37.

Supreme Court of Wyoming.

April 6, 1999.

Sylvia L. Hackl, State Public Defender; and Donna D. Domonkos, Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Robert Hernandez appeals from the judgment and sentence which was entered after a jury found that he was guilty of aggravated assault.

We affirm.

## ISSUES

Hernandez submits four issues for our review:

ISSUE I

Was it . . . plain error for the trial court to fail to fully instruct the jury on the "justification to act" component of self-defense and to not instruct the jury on the "amount of force" portion of self-defense?

ISSUE II

Did the trial court commit plain error when it permitted the introduction of improper victim impact testimony?

ISSUE III

Did the trial court commit plain error when it permitted the introduction of evidence that Appellant was a drug dealer and a former gang member?

* Retired November 2, 1998.

ISSUE IV

Was Appellant denied effective assistance of counsel?

## FACTS

On February 12, 1997, Hernandez went to a concert at a Rock Springs bar with William Morgan and Dean Domson. Morgan decided that he wanted drugs and asked Hernandez to get them for him. He gave Hernandez his wallet, and Hernandez left the bar to procure some cocaine.

At approximately 11:00 p.m., even though Hernandez had not yet returned, Morgan and Domson decided to leave the bar because the concert was over. As the men were driving out of the parking lot, they saw Hernandez drive into the parking lot. They pulled over, and Morgan got out of their vehicle, called Hernandez a name as he approached him, and asked for his wallet. Hernandez responded with an equally harsh name and told Morgan that he had not given him enough money to buy the cocaine. Hernandez got out of his vehicle and slapped Morgan across the face with the wallet. Morgan shoved Hernandez and punched him in the forehead, knocking Hernandez to the ground. Morgan took his jacket off, and the two men began fighting. Domson finally pulled Morgan off Hernandez because it looked like Morgan was seriously hurting Hernandez. Morgan and Domson argued for a short time about whether Domson should have interfered in Morgan's business, and Domson told Morgan that he was leaving because he did not want to get into trouble with the police.

According to Morgan and Domson, they decided to leave, and, when they started to get into Domson's vehicle, Hernandez stabbed Morgan in the chest with a knife. Hernandez did not testify, but he told police officers who did testify that, while Morgan and Domson were arguing, he opened his pocket knife. Hernandez told the officers that he warned Morgan that he had a knife but Morgan rushed at him anyway and was stabbed. Regardless of which version is true, Morgan apparently grabbed Hernandez's wrist after he had been stabbed, and Domson took the knife. While Morgan was being tended to, Hernandez demanded that his knife be returned. Domson complied, and Hernandez left the parking lot. An ambulance was summoned, and Morgan was taken to the hospital where he was treated for a punctured left lung and for a cut in the sack around his heart.

Hernandez was arrested that night and charged with aggravated assault in accordance with Wyo. Stat. Ann. § 6–2–502(a)(ii) (Michie 1997). A jury convicted Hernandez of aggravated assault, and the trial court sentenced him to serve a term in the Wyoming State Penitentiary of not less than seven years nor more than ten years with credit being given for the time that he had already served. Hernandez appeals to this Court.

## DISCUSSION

### A. Jury Instructions

Hernandez contends that the trial court committed plain error when it failed to fully instruct the jury on the law of self-defense. He maintains that the full instruction addressing the "justification to act" in self-defense and the "amount of force" which is allowed should have been submitted to the jury. The state counters that the instructions adequately and sufficiently explained the law of self-defense.

The district court has "wide latitude in instructing the jury; and as long as the instructions correctly state the law and the entire charge to the jury adequately covers the issues, reversible error will not be found." *Baier v. State*, 891 P.2d 754, 756 (Wyo.1995). We read the instructions in their entirety to determine whether they correctly state the law and adequately cover the issues. *Id.* "The duty of the trial court is to present in the instructions to the jury the law applicable to the issues actually raised by the evidence." *Id.* A defendant has the right to have instructions given on his theory of the case or on his defense if the instructions sufficiently inform the jury of the theory of defense and if competent evidence supports the law expressed in the instructions. *Id.*

The trial court gave the following instructions regarding the law on self-defense:

## INSTRUCTION NO. 10

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 12th day of February, 1997

2. In the County of Sweetwater, and State of Wyoming

3. The Defendant, ROBERT HERNANDEZ

4. Knowingly caused

5. Bodily injury to William Morgan

6. With a deadly weapon

7. And was not acting in self-defense.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

## INSTRUCTION NO. 14

One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.

If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense.

## INSTRUCTION NO. 15

The right of self-defense exists only as long as the real or apparent threatened danger continues to exist. When the danger ceases to appear to exist, the right to use force in self-defense ends.

## INSTRUCTION NO. 16

To justify acting in self-defense, it is not necessary that the danger was real, or that the danger was impending and immediate, so long as the defendant had reasonable cause to believe and did believe these facts.

## INSTRUCTION NO. 17

Wyoming law requires that, prior to resorting to deadly force, a person has a duty to pursue reasonable alternatives under the circumstances, and that among those reasonable alternatives may be the duty to retreat.

Hernandez claims that Instruction No. 16 should have included a sentence which stated:

"If those two requirements are met, acting in self-defense is justified even though there is no intention on the part of the other person to do the defendant harm, nor any impending and immediate danger, nor the actual necessity for acting in self-defense."

He maintains that this information was vital to his defense because, without it, the jury was not aware it could find that he acted in self-defense even though the evidence showed that Morgan did not intend to harm him, that no impending and immediate danger actually existed, or that no actual necessity for acting in self-defense existed.

Hernandez's argument is similar to the one asserted in *Baier*, 891 P.2d 754. In that case, the jury was informed that self-defense was justified if a person believed

"he was in immediate danger of harm as made it reasonable and necessary to use the degree of force actually involved; that the circumstances were such to warrant reasonable grounds for such belief in the mind of a reasonable man; and that there was no other reasonable method of escaping or resolving the conflict."

891 P.2d at 757. Baier argued that the trial court did not adequately instruct the jury on the law of self-defense because it did not explain that actual danger was not required to justify a person acting in self-defense. 891 P.2d at 758. We held that the instructions, taken as a whole, informed the jury of the law of self-defense. *Id.* We also stated:

The law of self-defense finds its foundation in the concept of necessity. The right to defend oneself, and the amount and type of force used, is relative to what is reasonably necessary under the circumstances. It is for the jury to determine whether a defendant reasonably perceived a threat of immediate bodily injury under the circumstances and whether the defendant defended himself in a reasonable manner. Thus, the jury must evaluate the totality of the circumstances and evaluate all of the defendant's options in protecting himself from such a perceived threat of harm.

*Id.* (citations omitted).

█ In the case at bar, the instructions, when read together, sufficiently informed the jury that the law of self-defense in Wyoming is a defense of necessity which is evaluated under the totality of the circumstances and in light of what is reasonable and appropriate. The jurors were instructed that one who has reasonable grounds to believe another will attack has the right to arm himself for the purpose of resisting the attack; that the right of self-defense exists so long as the real or apparent danger continues to exist; that self-defense was justified if the defendant reasonably believed the danger was real or impending even if it was not; and that the amount of force allowed may rise to the level of deadly force, depending on what the jury deems was reasonable under the circumstances. We conclude that there was not any error, plain or otherwise, in the instructions which the trial court gave to the jury.

## B. Victim Impact Testimony

Hernandez claims that the trial court committed plain error when it allowed testimony from Morgan about the injuries he sustained as a result of the knife wound and when it allowed a comment from Domson that the incident had caused him to have nightmares. The state responds by arguing that the testimony was relevant.

█ Before evidence can be admissible, it must be relevant. W.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be with-out the evidence." W.R.E. 401. In criminal cases, "[e]vidence is always relevant if it tends to prove or disprove one of the elements of the crime charged." *Grabill v. State*, 621 P.2d 802, 809 (Wyo.1980). *See also Geiger v. State*, 859 P.2d 665, 667 (Wyo. 1993).

█ Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice." W.R.E. 403. Victim impact testimony must not be permitted "unless there is a clear justification of relevance." *Justice v. State*, 775 P.2d 1002, 1011 (Wyo.1989). For this Court to conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, Hernandez must demonstrate "that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981). *See also Geiger*, 859 P.2d at 668.

This Court addressed the issue of the admissibility of victim impact testimony in *Geiger*. In that case, we held that the testimony which described the victim's injuries was relevant and clearly justified as proof of the "intent to kill" element of the crime because the nature of the injuries demonstrated Geiger's aim and close proximity to the victim when she fired the pistol four times. 859 P.2d at 668. We concluded that, although some of the isolated questions and answers may have been irrelevant, taken as a whole, the testimony was relevant and any error which occurred with the admission of the irrelevant testimony was harmless. *Id.*

█ The testimony at issue from Morgan in this case described the pain and problems he suffered after the stabbing occurred. Because one of the elements of the crime of aggravated assault is that the defendant inflicted bodily injury with a deadly weapon, we conclude here, as we did in *Geiger*, that, although some of the individual questions and answers might have been irrelevant, taken as a whole, the testimony was relevant as proof of this element of the crime. We hold, therefore, that there was not any error, plain or otherwise.

■ Regarding Domson's statement that he was having nightmares about the incident, the defense counsel opened the door to that testimony. *See Gayler v. State*, 957 P.2d 855, 859 (Wyo.1998). The defense counsel asked Domson how Hernandez was holding the knife. He answered: "He had both arms out, knife in the right, and hopping up and down, acting like a—joker's smile on his face, stating, 'Is this what you want, Billy[,'] and it was flat frightening." On redirect, the prosecutor inquired about how this experience had affected Domson. The defense counsel objected, but the prosecutor argued that he should be able to explore Domson's statement that the incident was "flat frightening." The trial court overruled the objection, and, in response to a question about whether the incident had been scary, Domson said he had been having nightmares about it. Hernandez has not shown that the testimony did not have probative value, that it was extremely inflammatory, or that its introduction was intended to inflame the jury. The trial court did not err in deciding to allow the prosecutor to explore this area of Domson's testimony once the door had been opened. *Id.*

## C. Other Bad Acts Evidence

Hernandez contends that the evidence indicating he was a drug dealer and a former gang member in Los Angeles was irrelevant and unduly prejudicial, that it was not introduced pursuant to W.R.E. 404, and that it was admitted in violation of a pretrial stipulation. The state claims that the testimony was necessary to describe the relationship between the victim and Hernandez and to rebut an improper inference by the defense counsel.

In our discussion of the last issue, we set out the standard of review we use to determine whether testimony was relevant. The same standard applies to this issue because Hernandez complains that the specified testimony was irrelevant and unduly prejudicial and that it violated the pretrial stipulation on the use of prior bad acts.

Before the trial, Hernandez requested that the prosecution disclose all evidence which might be admissible under W.R.E. 404. The prosecution responded that it intended to offer the following prior bad acts evidence: that Hernandez was convicted in 1992 of battery; that he killed a man in 1980; and that he pleaded guilty in 1996 to attempted possession of a dangerous weapon by a restricted person and, in exchange for his plea, two charges of possession of a controlled substance were dismissed. Hernandez objected to this evidence being admitted.

The prosecution and Hernandez entered into a written stipulation wherein the prosecution agreed not to use, in its case-in-chief, evidence that Hernandez had been charged in 1980 with killing a man; evidence that Hernandez pleaded guilty in 1996 to attempted possession of a dangerous weapon by a restricted person, including evidence relating to drugs which were in Hernandez's vehicle when he was arrested; or evidence of Hernandez's 1992 battery conviction.

■ During the trial, some of the testimony revealed other bad acts which were not covered by the stipulation. Hernandez complains in particular about three portions of the trial testimony. The first section of the testimony which Hernandez takes issue with occurred during the direct examination of Morgan. Morgan testified that he met Hernandez while he was camping with his family. He explained that his sister introduced him to Hernandez because Hernandez sold drugs and she thought Morgan might want to know him for that reason. He stated that he and Hernandez became good friends, that Hernandez was a good supplier of drugs, and that his prices were always low. This testimony was relevant because it supported Morgan's statement that he had an ongoing relationship with Hernandez.

■ The second area of the testimony Hernandez challenges occurred during the redirect examination of Morgan. On cross-examination, Morgan was asked to explain why he had testified that he knew he would have to finish the fight with Hernandez. He responded: "Well, I—I had known that Robert was an ex-gang member from L.A. I knew that if I had any trouble with him, that he would either come back on me, or it should be finished there." During the redirect examination, the prosecutor examined

Morgan further regarding this statement. Morgan stated that he and Hernandez had talked about their pasts and that Hernandez had bragged about being a gang member in Los Angeles. We agree with the state that the reference to gang membership was initially elicited by the defense and that further development by the prosecution was justified.

■ The last piece of testimony that Hernandez claims should not have been admitted into evidence was Morgan's sister's statement that Hernandez had traded a quarter pound of marihuana for a horse. The purpose of this statement was to clarify an implication by the defense counsel earlier in the trial that Hernandez had been given a horse in exchange for work which he had done. We hold that there was not any error, plain or otherwise, committed by allowing that testimony into evidence.

### D. Ineffective Assistance of Counsel

Hernandez contends that he was not afforded effective assistance of counsel. He maintains that his counsel committed four serious errors which deprived him of his constitutional right to have effective assistance of counsel: failure to submit the correct jury instruction pertaining to self-defense or to object to the instructions as given; failure to object to improper victim impact testimony; failure to object to, and in fact eliciting, testimony that Hernandez was a drug dealer and former gang member; and failure to argue the subjective component of self-defense in his opening statement and closing argument.

In order to prevail on his claim of ineffective assistance of counsel, Hernandez must make the dual showings that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Smith v. State*, 959 P.2d 1193, 1198 (Wyo. 1998). With the exception of Hernandez's claim that his attorney should have argued the subjective component of self-defense in his opening statement and closing argument, we addressed the areas, in our discussion of the issues above, where Hernandez claims his counsel was ineffective. Having concluded that no error occurred in those areas of the trial, we rule that Hernandez's assistance of counsel was not deficient.

■ Regarding the assertion that his attorney should have argued the subjective component of self-defense in the opening statement and his closing argument, Hernandez claims that his attorney should have informed the jury that it was not necessary for the threat to be real or for the danger to be impending and immediate before self-defense was appropriate. During his closing argument, the defense counsel explained that Hernandez knew Morgan had badly beaten people in the past. The defense counsel suggested that Hernandez was not required to allow Morgan to do the same or worse to him before he had the right to defend himself. Additionally, as we discussed in the first issue, the jury was instructed that the right of self-defense exists whether the threatened danger is real or apparent and that it is not necessary for the danger to be real or impending and immediate before self-defense is justified as long as the defendant reasonably believes it is.

We hold that Hernandez has not shown that his counsel's performance was deficient. Although in hindsight Hernandez's attorney may have done some things differently, his performance did not rise to the level of being unconstitutionally defective.

Affirmed.

LEHMAN, Chief Justice, concurring, with whom GOLDEN, Justice, joins.

While I agree Hernandez's conviction should be affirmed, I follow a different trail than the one blazed by the majority opinion. Therefore, with the following exceptions, I concur in the majority opinion.

My disagreement with the majority opinion surrounds two of Hernandez's claims of evidentiary error. First, I do not agree that defense counsel opened the door to testimony from state witness Domson about his nightmares from the incident. "Succinctly stated, the 'opening the door' rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not competent but relevant cannot complain if his adversary is also allowed to avail him-

self of the opening within its scope." *Sanville v. State,* 593 P.2d 1340, 1344 (Wyo.1979). While this court has not had occasion to discuss the importance of a responsive answer in the context of the opening the door doctrine, we have addressed the problem under the related invited error doctrine. "A testimonial error is considered invited where the objectionable testimony is responsive to a question posed by the objecting party's counsel." *McCone v. State,* 866 P.2d 740, 751 (Wyo.1993); *see also, Pack v. State,* 571 P.2d 241, 246–47 (Wyo.1977). The reason for such a limitation is simple, as expressed by this court: "Nevertheless, the above does not give license to law enforcement representatives to in bad faith volunteer seemingly prejudicial information." *McCone,* 866 P.2d at 751.

Unlike the majority, I do not believe Domson's assertion that the manner in which Hernandez held the knife was "flat frightening" was responsive to the cross-examination question by defense counsel of "how was he holding the knife?" I am afraid that, in the future, this court will have difficulty repairing the majority's easily opened doors. Therefore, I would not rely on either the opening the door or invited error doctrine to sanction this field of inquiry. *See Fortner v. State,* 843 P.2d 1139, 1148–49 (Wyo.1992). Nevertheless, I would hold the error harmless under the circumstances of this case. During the four-day trial, Domson's simple statement that "I have nightmares about it" was not sufficiently prejudicial that a reasonable probability exists that, but for the error, the verdict would have been more favorable to Hernandez. *Kerns v. State,* 920 P.2d 632, 641 (Wyo.1996).

My second disagreement with the majority opinion concerns the evidence of Hernandez's drug dealing as it pertains to the "ongoing relationship" between Morgan and Hernandez. First, the majority neglects to mention that there was no objection to this testimony. Morgan testified that his sister introduced him to Hernandez because Hernandez sold drugs and she "felt [Morgan] might be interested in knowing him because of that." Morgan went on to testify that Hernandez was a good supplier of drugs, and the prices were "really low." All of this testimony was admitted without objection. Defense counsel did object, however, when the prosecutor asked what kinds of drugs Hernandez supplied. The objection was sustained, despite the prosecutor's protests that "I'm establishing the relationship he had with Mr. Hernandez." With this being the state of the record, Hernandez is confronted with the plain error standard.

Under this court's plain error standard, "the accused may raise on appeal a claim of plain error in the admission of evidence of prior bad acts, but it will be incumbent upon the accused to offer case authority specifically foreclosing admission of the evidence under the circumstances of the case." *Vigil v. State,* 926 P.2d 351, 355 (Wyo.1996). Because Hernandez has not presented case authority specifically foreclosing admission of the evidence, he has failed to satisfy the plain error standard for making a claim under W.R.E. 404(b).

Even assuming that the introduction of the testimony violates W.R.E. 404(b), I do not believe that Hernandez has established prejudice sufficient to warrant reversal, especially when he does not protest other testimony relating to his involvement with drugs. Specifically, Hernandez does not complain about Morgan's testimony that Hernandez supplied the marijuana cigarette the two shared before dinner. In addition, Hernandez does not protest the relevance of his unsuccessful attempt to obtain cocaine for Morgan the night of the stabbing. Perhaps most importantly, the district court sustained defense counsel's objection before the challenged line of questioning got too far out of hand. Under these circumstances, rather than attempting to justify the admission of the drug dealing testimony, I would simply hold that Hernandez has not established plain error. With the foregoing exceptions, I concur in the majority opinion.