2006 WY 34

**Francis Mack THOMAS, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 04–264.**

Supreme Court of Wyoming.

March 22, 2006.

Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel, for appellant. Argument by Ms. Domonkos.

Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Director PAP; Jonathan Haidsiak, Student Director PAP; Timothy J. Forwood, Student Intern, for appellee. Argument by Mr. Haidsiak.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] A jury convicted Francis Thomas of one count of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2005) and found him to be an habitual criminal under Wyo. Stat. Ann. § 6–10–201(a)(i) and (ii) (LexisNexis 2005). He appealed, claiming the trial court erred when it denied his motions for mistrial based upon the State's discovery violations and improper use of W.R.E. 404(b) evidence. He also claimed plain error occurred when the State argued battered woman syndrome in closing argument and presented irrelevant victim impact testimony. We find no error and affirm.

## ISSUES

[¶ 2] Mr. Thomas states the issues as follows:

Issue I

Whether the trial court erred when it denied defense counsel's motion to dismiss or motion for mistrial for discovery violations.

Issue II

Whether plain error occurred when the State used battered woman's syndrome in an impermissible manner.

Issue III

Whether plain error occurred when the State elicited irrelevant victim impact testimony.

Issue IV

Whether the trial court erred when it denied defense counsel's motion for mistrial after the State introduced Rule 404(b) evidence that had not been previously disclosed and when it admitted Rule 404(b) evidence that was more prejudicial than probative.

Issue V

Whether cumulative error occurred.

The State re-phrases the issues as follows:

I. Did the trial court err in concluding that a mistrial was not the appropriate remedy for the State's late disclosure of a cassette tape and a vehicle?

II. Has appellant demonstrated that plain error occurred in connection

with the prosecutor's references to battered-woman syndrome during closing argument?

III. Has appellant demonstrated that plain error occurred in connection with the admission of evidence designed to show the extent of [the victim]'s injuries?

IV. Did the district court abuse its discretion in authorizing the introduction of 404(b) evidence or in denying appellant's motion for a mistrial when the testimony briefly went beyond the scope of the pretrial order?

V. Does cumulative error require reversal?

## FACTS

[¶ 3] On March 22, 2004, the Carbon County Attorney's Office filed an information alleging that on March 2, 2004, Mr. Thomas committed aggravated assault and battery and kidnapping in violation of Wyo. Stat. Ann. §§ 6–2–502(a)(i), 6–2–201(a)(iii) and (b)(i) (LexisNexis 2005) and was an habitual criminal pursuant to Wyo. Stat. Ann. § 6–10–201(a)(i) and (ii) (LexisNexis 2005). The affidavit supporting the information alleged that Mr. Thomas and the victim were traveling from Colorado along Interstate 80 near Arlington, Wyoming when they got into an argument. Mr. Thomas hit the victim several times. When Mr. Thomas drove off the interstate onto a side road, the victim opened the passenger door and tried to get out while the vehicle was still moving. Mr. Thomas grabbed her and held her as he continued to accelerate down a dirt road, dragging the victim next to the vehicle until all of the clothes on the lower half of her body were ripped off. Mr. Thomas then stopped the vehicle, got out, dragged the victim away from the vehicle and proceeded to strangle her.

[¶ 4] After the attack, the victim wandered around in the snow for approximately one hour. Mr. Thomas returned, apologized and offered to take her for medical treatment. Instead, he took her to the motel in Rock Springs where they were staying and left her. She called 911 and a police officer was dispatched to her room at the motel.

He transported her to the hospital for treatment of her injuries. Initially, she told law enforcement someone else was responsible for her injuries. While she was in the hospital, however, she changed her story and said Mr. Thomas attacked her.

[¶ 5] On March 10, 2004, the Sweetwater County Sheriff's Office received a call from the public defender's office stating Mr. Thomas, who had by then been arrested and was in custody, was willing to show investigators where the incident occurred. Law enforcement went to the location Mr. Thomas identified and recovered the victim's clothing. A criminal history check revealed Mr. Thomas had more than three prior felony convictions.

[¶ 6] Mr. Thomas entered a plea of not guilty to the charges. Prior to trial, he filed motions for orders requiring the State to disclose all impeachment, prior bad acts and exculpatory evidence. Responding to the motion for discovery of exculpatory evidence, the State indicated it had provided all such material then in its possession to the defense with the exception of audio recordings of interviews with Mr. Thomas and the victim, which recordings would be provided as soon as they were available.

[¶ 7] Responding to the motion to disclose Rule 404(b) evidence, the State filed a notice of intent to introduce the victim's testimony concerning several prior incidents of violence committed against her by Mr. Thomas. The State indicated it intended to use this testimony for the purpose of showing the nature of the couple's relationship, Mr. Thomas' course of conduct and the improbability that his actions on this occasion were a mistake or an accident. The State also filed a motion disclosing its intent to use evidence of Mr. Thomas' prior convictions to impeach him in the event he chose to testify at trial.

[¶ 8] The district court held a hearing on the motions on August 24, 2004. Following the hearing, the district court entered an order finding the evidence of prior bad acts was offered for a proper purpose, that is, to show course of conduct, identity and absence of mistake or accident; was relevant; had probative value that was not outweighed by

its potential for unfair prejudice; and, could be presented by the State subject to a limiting instruction prepared by the defense. No written order appears in the record concerning the motions for disclosure of impeachment and exculpatory evidence.

[¶ 9] Trial commenced on the charges against Mr. Thomas on September 7, 2004. On September 9, 2004, after three full days of trial, the district court submitted the case to the jury for deliberations. The following morning, the jury returned a verdict finding Mr. Thomas guilty of aggravated assault and battery and not guilty of kidnapping. The district court then proceeded with trial on the habitual criminal charge, and that same morning, the jury returned a verdict of guilty on that charge. On September 23, 2004, the district court entered a judgment and sentenced Mr. Thomas to life imprisonment.

## STANDARD OF REVIEW

[¶ 10] We review Mr. Thomas' claims of error in the denial of his motion for mistrial and improper admission of Rule 404(b) evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse. *Oldman v. State*, 998 P.2d 957, 963 (Wyo.2000). A trial court abuses its discretion when it could not have reasonably concluded as it did. *Gunnett v. State*, 2005 WY 8, ¶ 15, 104 P.3d 775, 779 (Wyo.2005). In this context, "reasonably" means sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.*

[¶ 11] Before reaching the question of whether the district court abused its discretion in denying the motion for a mistrial based upon discovery violations we must determine whether the evidence the State withheld was material and whether the fail-

ure to disclose it to the defense affected the outcome of the trial. *Whitney v. State*, 2004 WY 118, ¶ 58, 99 P.3d 457, 476 (Wyo.2004). These are mixed questions of fact and law. *Id.* A claim of failure to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) is reviewed *de novo. Id.*

[¶ 12] The defense failed to object to the State's use of the battered woman's syndrome and victim impact testimony. Therefore, we review Mr. Thomas' claims of error on those issues for plain error. *Janssen v. State*, 2005 WY 123, ¶ 14, 120 P.3d 1006, 1010 (Wyo.2005). Plain error occurs when the record shows an error that transgressed a clear and unequivocal rule of law and adversely affected a substantial right. *Id.*

## DISCUSSION

### 1. Denial of Motion to Dismiss or For Mistrial Based Upon State's Alleged Discovery Violations

[¶ 13] On the morning of September 9, 2004, the third day of trial, defense counsel moved for dismissal of the case or a mistrial on the grounds the State failed to produce discovery in a timely manner. The motion was based upon the State's failure to produce, prior to trial, two pieces of evidence: an audio tape of a law enforcement interview of the victim[1] and the vehicle in which the assault occurred. The State produced the audio tape on the second day of trial and the vehicle on the morning of the last day of trial. In response to the motion for mistrial, the State indicated "there had been a miscommunication that these items didn't exist or were no longer in custody. We tried to rectify that as soon as we realized they were in custody." The district court denied the motion.[2] In his first issue presented to this

---

1. Law enforcement officials interviewed the victim several times. It is difficult to discern from the record, but it appears that three of those interviews were recorded. The State produced to the defense taped interviews by Detective Christensen and Patrolman McCracken. The audio tape at issue on appeal contains an interview conducted by Deputy Hawkins. This tape recorded interview is not mentioned anywhere in

the record until the last day of trial, when it became a basis for the motion for mistrial.

2. Although the district court denied the motion, it stressed the State's duty to preserve and provide evidence to the defense. The district court stated: "The Court is sympathetic to what [the defense] is saying and puts the County Attorneys on notice—puts all the County Attorney's Office on notice now that this kind of conduct won't be

Court, Mr. Thomas claims it was error for the district court to deny the motion.

[¶ 14] In *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, the United States Supreme Court held: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." We have applied *Brady* to hold that the duty to disclose exculpatory evidence applies even though there has been no request by the accused, and encompasses evidence known only to police investigators and not to the prosecution. *Whitney*, 2004 WY 118, ¶ 58, 99 P.3d at 476. "In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.' " *Id.*

[¶ 15] In order to establish a *Brady* violation, a defendant must demonstrate the prosecution suppressed evidence, the evidence was favorable to the defendant, and the evidence was material. *Id.* Evidence is material under *Brady* only when a reasonable probability exists that the result of the proceeding would have been different had the evidence been disclosed. *Adams v. State*, 2005 WY 94, ¶ 22, 117 P.3d 1210, 1217–18 (Wyo.2005). A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the outcome of the trial. *Davis v. State*, 2002 WY 88, ¶ 19, 47 P.3d 981, 987 (Wyo.2002).

[¶ 16] The delayed disclosure of *Brady* materials is not always grounds for reversal. *Whitney*, 2004 WY 118, ¶ 58, 99 P.3d at 476. As long as disclosure is made before it is too late for the defendant to make use of the evidence, due process is satisfied. *Id. Brady* is not violated when the material is available to the defendant during trial. *Id.* The essence of *Brady* is the discovery of information *after the trial*, which was known to the prosecution but unknown to the defense during the trial. *United States v.*

*Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Thus, where exculpatory evidence is discovered during the trial and defense counsel has the opportunity to use it in cross-examination, closing argument, or other parts of the defense case, courts generally do not find a due process violation. *United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir.1997); *Young v. State*, 849 P.2d 754, 765 (Wyo.1993).

[¶ 17] In the present case, there is no dispute that the audio tape was disclosed on the second day of trial, and the vehicle was made available on the third day of trial. Defense counsel had the opportunity to, and in fact did, use the audio tape in cross-examining the deputy who conducted the taped interview. As for the vehicle, defense counsel's theory was that the victim's account was not credible because it would not have been possible for Mr. Thomas to steer the vehicle on a dirt road at a high rate of speed for a mile and a half at the same time he was holding her by the arm to keep her from jumping out of the vehicle. His focus seemed to be on the door locking system and the width of the vehicle. In his argument to the district court, he stated only that he would have liked to have a forensic scientist look at the vehicle; he did not specifically identify any evidence he hoped to obtain that he could not have obtained by looking at another vehicle of the same make, model and year. Defense counsel had the opportunity to cross-examine witnesses and argue his impossibility theory to the jury.

[¶ 18] Mr. Thomas has failed to show the State's late disclosure violated *Brady* or his due process rights. The evidence about which he asserts error was disclosed and made available to the defense during the trial. Defense counsel did not seek a continuance, but instead chose to proceed with the trial and do what he could with the newly disclosed evidence. *See also Rodriguez v. State*, 962 P.2d 141, 145–46 (Wyo.1998). The district court was impressed with his efforts, complimenting him on his preparation of the newly disclosed evidence for presentation to

tolerated in the future. We will have specific discovery deadlines. You will abide by those

deadlines or your cases will be dismissed."

the jury, and concluded he had adequately responded to the late disclosure. Having considered all of the circumstances, we are unable to find a due process violation. In reaching this result, we do not condone the State's delayed disclosure of evidence. We hold only that no *Brady* violation occurred and there was no abuse of discretion in the denial of the motion for mistrial.

### 2. The State's Use of Battered Woman's Syndrome

[¶ 19] In its case-in-chief, the State presented the testimony of Dr. Christopher B. Reyburn, a psychiatrist, concerning battered woman's syndrome. Dr. Reyburn testified generally about the behaviors associated with the syndrome. He did not testify concerning the victim or whether she exhibited behaviors typical of persons suffering from the syndrome. He also did not testify concerning the characteristics of batterers or Mr. Thomas' behavior. In closing argument, the State used Dr. Reyburn's testimony concerning battered woman's syndrome to explain the victim's behavior in relation to Mr. Thomas and the assault. Mr. Thomas asserts the State's use of the battered woman's syndrome testimony was plain error.

[¶ 20] Plain error occurs when the record shows an error that transgressed a clear and unequivocal rule of law and adversely affected a substantial right. *Janssen,* 2005 WY 123, ¶ 14, 120 P.3d at 1010. We have said,

> [b]attered-woman-syndrome testimony is admissible and helpful to the jury; however, it must not run afoul of W.R.E. 404(a), which provides in pertinent part:
>
> > Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion.
>
> When battered-woman-syndrome testimony is raised by the State in its case-in-chief and relates to a defendant ... the "testimony 'draws close to commenting directly on what likely happened' and 'looks like character evidence after all.' " Evidence concerning a defendant's involvement demands close scrutiny under the character evidence rules. "This is so even if reference to the defendant may only be inferred from the testimony."

*Kenyon v. State,* 2004 WY 100, ¶ 21, 96 P.3d 1016, 1025 (Wyo.2004) (citations omitted).

[¶ 21] In *Kenyon,* expert testimony concerning battered woman's syndrome was presented to explain the victim's irrational behavior in answer to the defendant's specific defenses that the victim's behavior proved he had not battered or kidnapped her. We said, "An explanation of the victim's conduct is admissible, and to the extent that it describes characteristics of those in the relationship, those references are an integral part of admissible framework evidence and not character evidence." *Kenyon,* 2004 WY 100, ¶ 23, 96 P.3d at 1025.

[¶ 22] Mr. Thomas argues, however, the testimony and argument were improperly allowed because they concerned character evidence and raised the inference that he acted in conformity with the traits of a batterer when he assaulted the victim. In support of this contention, he cites the language from *Kenyon,* cautioning that when battered woman syndrome evidence is used by the prosecution in its case-in-chief, it raises the specter of character evidence and must be carefully scrutinized. He also cites *Skinner v. State,* 2001 WY 102, 33 P.3d 758 (Wyo. 2001) and *Ryan v. State,* 988 P.2d 46 (Wyo. 1999).

[¶ 23] As mentioned above, in *Kenyon* we held the evidence was admissible when used to explain the victim's behavior. In *Skinner,* the State called an expert witness to testify concerning not only the behaviors of battered women but also the characteristics of batterers and the type of conduct they tend to exhibit. We held the profile testimony was inadmissible (although harmless) because its only purpose was to imply that because the defendant had a history of battering his wife, he had done so on this occasion as well. *Skinner,* 2001 WY 102, ¶ 30, 33 P.3d at 768. *Ryan* likewise involved expert testimony concerning the characteristics of batterers and we held that portion of the testimony inadmissible.

[¶ 24] Having carefully reviewed the record presented in this case, we

find no plain error in the district court's decision to allow Dr. Reyburn's testimony and the State's argument concerning battered woman's syndrome. Dr. Reyburn's testimony concerned the behavior of victims of abuse and did not address the characteristics or behaviors of perpetrators of abuse. The State used the testimony in closing argument to explain why someone who had been abused would go back into or stay in the abusive relationship. This is a permissible use of battered woman's syndrome evidence.

### 3. Victim Impact Testimony

[¶ 25]   Mr. Thomas argues next that plain error occurred when the State elicited testimony concerning the severity of the victim's injuries, testimony that he characterizes as victim impact testimony. He complains specifically about testimony from law enforcement personnel and a nurse to the effect that in all of their years of witnessing injuries, the victim's injuries were "right up there at the top of the list", "very high for someone who is actually alive", "something that stays in your mind . . . you definitely remember it", and "for someone who is still alive, . . . very severe." He also cites the victim's testimony describing her injuries as follows:

I have trouble hearing in my left ear now because he hit me so many times toward the back of my ear into my drum. He strangled me and damaged one of my vocal cords. He strangled me, I had bruises and cuts and scrapes all over my face and bruises around my mouth where he was holding my mouth to blow crack into it. I had a splint here, and I was ripped— I was cut all up here in my hip. I have numbness in my hip and leg now. I have a lot of nerve damage. I was bruised there.

My arms, my legs and my feet were frostbitten, and they told me I was going to lose my—they may have to amputate from the ankles down. I had third and fourth degree burns on my head, my head hurt really bad. I was in and out of consciousness. I think I had a concussion at the time. I couldn't even get up to open the door at the hospital, so some things I don't remember.

I remember they wouldn't let me see myself in the mirror, it was too bad to look at myself in the mirror. They took the mirror and wouldn't let me look. I was bleeding everywhere.

\* \* \* \*

I still may lose my toe on my left side. I have nerve damage in my right leg, and I may end up not being able to have it for long. Two screws in my spine were broken after the surgery in my back, I am going to have more surgery. In my jaw— I have to have surgery on my face from my jaw because it was knocked out in this side over here. They have to go and redo it and fix some of my teeth.

And this arm is only 30 percent use in it, or my wrist. Now I have severe headaches, I can only stand up for two or three hours at a time. I can't wear shoes very much, they always start hurting. My feet are always cold. When they get numb, I will fall. I don't have any feelings in them.

They said it would be two years before I can get back to normal, if that. I am still under the doctor's care. I have to see a psychiatrist all the time because I can't sleep at night and I'm sick to my stomach all the time because I remember what he did to me.

[I still live in fear of him] every day. I can't even be alone anymore because I'm scared that he's got someone out there following me or trying to kill me.

[¶ 26]   In *Justice v. State,* 775 P.2d 1002, 1010 (Wyo.1989), we held victim impact testimony was irrelevant to the issues the jury had to decide. We said:

It is clear that the testimony offered by the victims of this crime with respect to how it affected them in connection with their lives after the crime is absolutely irrelevant with respect to the issues before the jury. Their discussion of the impact of the crime upon them could not in any way serve to establish any of the elements of the crime of aggravated robbery. The only purpose must have been to attempt to arouse the passions of the jury. Consequently, we are satisfied that the admission of such evidence is error, and the trial courts are cautioned not to permit such

evidence to be presented unless there is a clear justification of relevance.[3]

[¶ 27] Since *Justice,* we have held in several cases that victim impact testimony was admissible under the circumstances presented. In *Geiger v. State,* 859 P.2d 665, 668 (Wyo.1993), an attempted murder case in which we held such testimony was admissible, we said:

The challenged testimony, concerning the impact of the attempted murder on Romero, consisted of his descriptions of his injuries, his feelings at the time, and his remarks concerning a potential civil action against Geiger. The testimony describing Romero's injuries was relevant and clearly justified as proof of the element of intent to kill. The nature of the injuries demonstrated Geiger's aim and close proximity to Romero when she fired her pistol four times. Romero's testimony concerning a possible civil action was in response to questions propounded by Gieger's defense attorney during cross-examination. While some of the individual isolated questions and answers may have been irrelevant, as a whole, the testimony was relevant and any error presented by the irrelevant victim impact testimony was harmless.

[¶ 28] In *Hernandez v. State,* 976 P.2d 672, 676 (Wyo.1999), an aggravated assault case, we considered whether the admission of victim impact testimony constituted plain error. We said:

Before evidence can be admissible, it must be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In criminal cases, "evidence is always relevant if it tends to prove or disprove one of the elements of the crime charged."

Relevant evidence may be excluded, however, if "its probative value is substan-

tially outweighed by the danger of unfair prejudice." Victim impact testimony must not be permitted "unless there is a clear justification of relevance." For this Court to conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, [the defendant] must demonstrate "that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury."

We applied these standards in *Hernandez* to hold no error occurred in the admission of testimony from one of the victims concerning the pain and problems he had after being stabbed. We said: "although some of the isolated questions and answers may have been irrelevant, taken as a whole, the testimony was relevant as proof of [the serious bodily injury] element of the crime." *Id.*

[¶ 29] More recently, in *Lancaster v. State,* 2002 WY 45, ¶ 46, 43 P.3d 80, 98–99 (Wyo.2002), we held the challenged victim impact testimony in totality was relevant to the issue of whether the defendant intended to kill the victim, while testimony concerning the "emotional fallout" from the assault was irrelevant. Addressing the latter testimony, we concluded it was not unduly prejudicial given the amount of other evidence showing the defendant's guilt.

▮▮▮▮ [¶ 30] Generally, the victim impact statements presented in Mr. Thomas' case concerned the victim's injuries and, therefore, were properly allowed. In order to obtain a conviction for aggravated assault and battery, one of the elements the State was required to prove beyond a reasonable doubt was that Mr. Thomas inflicted "serious bodily injury," meaning "injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member of organ." Wyo. Stat. Ann. § 6–1–104(a)(x) (LexisNexis 2005). Most of the testimony about which he now claims plain error was relevant and admissi-

---

**3.** *Justice* does not set out the testimony the Court determined was irrelevant, so we are unable to compare the testimony at issue there with the testimony in our other cases. We do know, however, that *Justice* was an aggravated robbery case in which the victims were directed at gun-

point to lie down on the floor where they were bound and covered with a blanket so they could not observe the robbers. *Justice,* 775 P.2d at 1004. There is no indication they suffered bodily injury.

ble to prove this element of the crime charged. Borrowing the phrase from *Lancaster,* other portions of the quoted testimony concerned "emotional fallout" from the assault. While such testimony may not have been relevant, we are not persuaded it affected Mr. Thomas' substantial right. Given the weight of the evidence against Mr. Thomas, we conclude no plain error resulted from the admission of the victim impact statements.

### 4. W.R.E. 404(b) Evidence

[¶ 31] Prior to trial, the State provided notice that it intended to introduce evidence of prior incidents of domestic violence involving Mr. Thomas and the victim, including two incidents in New Mexico, two incidents in Texas, one incident in Colorado, and several incidents at the motel in Rock Springs, where the couple was living prior to the incident giving rise to this case. After a hearing, the district court determined the evidence was admissible under W.R.E. 404(b) to show course of conduct, identity and absence of mistake or accident. The district court also determined the evidence was relevant and the potential for unfair prejudice from its admission did not outweigh its probative value.

[¶ 32] Mr. Thomas contends the victim testified at trial concerning other incidents of domestic violence which had not been disclosed. He points to the following excerpt from the trial transcript:

Q: [the State]: Was there a time when the relationship began to deteriorate?

A: [victim]: Yes.

Q: And when was that?

A: About a year and a half ago—well, no, about two years ago, actually.

Q: What was the change in the relationship?

A: He—When he drank, he would drink, he would get violent. In fact, he started hitting me, calling me names. I was stupid, I couldn't do anything, nothing. No matter what I said, I was a liar. So he just hit me the whole time or embarrassed me in public.

Q: Where would he hit you?

A: Always in my face or my head or he would kick me in my legs, in my back, or he would hit me with whatever he had in his hand.

Q: And why didn't you leave him?

A: Because he was always sorry and he loved me and he didn't mean it. And I loved him and I thought that I could help him, maybe just help him, that he really meant it that he won't do it again. And I have never had anybody care for me my whole life. I haven't had anybody in my family. And he was always there no matter how angry he was at me, no matter what he did, he was always there to help me if I needed him and I thought he did love, he really did. But it wasn't love, I just wanted it to be, I guess.

Q: Did the hitting get worse?

A: Oh, yes, it got horrible. It was almost every day, it was almost before lunch or at lunch or it was nonstop all day long.

At this point in the testimony, defense counsel asked to approach the bench, the court excused the jury and defense counsel moved for a mistrial on the grounds the testimony went beyond the Rule 404(b) notice. The State responded it had notified defense counsel it intended to introduce evidence concerning Mr. Thomas' and the victim's relationship in general, in addition to evidence of specific instances of violence. The district court directed the State to limit the testimony to the specific incidents identified in the Rule 404(b) notice, ordered no further testimony would be allowed concerning the generalities of the relationship and denied the motion for mistrial. When the trial resumed, the district court instructed the jurors that the victim's prior testimony referred to specific incidents of violence and they were to consider her testimony in that regard not as proof of the crime, but only as proof of a course of conduct, identity and an absence of mistake or accident. The State then proceeded to elicit testimony from the victim concerning the incidents of violence that occurred in New Mexico, Texas and Colorado.

[¶ 33] Mr. Thomas contends the district court abused its discretion when it denied his motion for a mistrial. Specifically, he claims the district court abused its discretion when

it failed to require the State to explain, after the mistrial motion, how or why the evidence was more probative than prejudicial, and proceeded merely to give a limiting instruction. Mr. Thomas also asserts the district court abused its discretion when it ruled prior to trial that the testimony concerning the prior incidents of domestic violence was more probative than prejudicial.

[¶ 34] At the pre-trial hearing in which it ruled the evidence of prior violence between Mr. Thomas and the victim in New Mexico, Texas and Colorado was admissible, the district court applied the four-part test set forth in *Vigil v. State*, 926 P.2d 351, 357 (Wyo.1996). That is, the district court concluded: 1) the evidence was offered for a proper purpose; 2) the evidence was relevant; 3) the probative value of the evidence outweighed its potential for unfair prejudice; and 4) a limiting instruction should be given telling the jury to consider the evidence of prior violence only for the proper purpose for which it was admitted. *Id.* Thus, the district court determined before trial the evidence of prior violence was more probative than prejudicial. In reaching this conclusion, the district court was persuaded by the State's argument that the evidence demonstrated an ongoing pattern of Mr. Thomas' behavior, which culminated with the acts of violence on March 3, 2004, and helped to refute Mr. Thomas' claim that the victim caused her own injuries on March 3, 2004. From our review of the record, we are satisfied the district court appropriately considered the factors it was required to consider in ruling the evidence was admissible and we find no abuse of discretion.

[¶ 35] We turn to consideration of the district court's ruling denying the motion for mistrial. As mentioned in paragraph 29 above, the focus of Mr. Thomas' claim of error is that the district court, in response to the mistrial motion, did not require the State to explain how or why the evidence was more probative than prejudicial before denying the motion. We are unaware of any requirement when a mistrial motion is made that the district court must hear argument from the State as to how or why the evidence giving rise to a motion was more probative than prejudicial.

[¶ 36] The issue at the point when defense counsel moved for a mistrial was whether the testimony went beyond the scope of the State's notice of intent to use Rule 404(b) evidence. The district court in essence found it did, advised the State no more general testimony about the relationship would be allowed and instructed the State to limit its questioning to the specific incidents identified in the notice. The district court then instructed the jury the testimony previously presented concerned three specific incidents only and was to be considered not as proof of the crime but as proof of Mr. Thomas' course of conduct. Implicit in the district court's ruling is the finding that although the evidence went beyond the scope of the Rule 404(b) notice, any prejudicial effect the evidence might have did not warrant a mistrial.

[¶ 37] We find no abuse of discretion in the district court's ruling the testimony went beyond the scope of the Rule 404(b) notice. We likewise find no abuse of discretion in the district court's ruling that the testimony did not warrant declaring a mistrial. Any prejudicial effect of the testimony was mitigated by the court's actions in reining in the State and the victim and instructing the jury. The instruction, noted above, was given to the jury immediately when the trial resumed. The instruction explicitly told the jurors they were to consider the prior testimony in reference to three specific incidents of violence. The jury was instructed again before deliberations that the victim's testimony concerning prior violence was admitted for the limited purpose of establishing course of conduct, identity and absence of mistake and not for the purpose of convicting Mr. Thomas. We assume juries follow a court's curative instructions. *Metzger v. State*, 4 P.3d 901, 908 (Wyo.2000). Under these circumstances, neither the admission of evidence beyond the scope of the Rule 404(b) notice nor the district court's failure to require the State to explain how or why that evidence was more probative than prejudicial warrants reversal.

### 5. Cumulative Error

[¶ 38]   Having concluded there was no error requiring reversal, we likewise conclude no cumulative error occurred.

[¶ 39]   Affirmed.