**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRANCIS MACK THOMAS,

　　　　　Petitioner,

　　v.

ROBERT LAMPERT, Director,
Wyoming Department of Corrections,
and THE ATTORNEY GENERAL OF
THE STATE OF WYOMING,

　　　　　Respondents.

No. 09-8045

(D. of Wyo.)

(D.C. No. 07-CV-209-WFD)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **TACHA, TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

　　A Wyoming jury convicted Petitioner Francis Thomas of aggravated assault

and battery, a violation of Wyo. Stat. Ann. § 6-2-502(a)(i).  Because of Thomas's

criminal history, the jury also found him to be a habitual criminal under Wyo.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

Stat. Ann. § 6-10-201 and eligible for a mandatory life sentence. Thomas is currently serving his life sentence in state prison.

Thomas exhausted his appeals and post-conviction remedies in state court and, pursuant to 28 U.S.C. § 2254, filed a pro se petition for a writ of habeas corpus in federal district court. In a careful opinion, the district court analyzed Thomas's constitutional claims, concluded each lacks merit, and denied his petition. Thomas, still acting pro se, now seeks a certificate of appealability from this court to allow him to pursue nine of the eleven claims he raised below.

Thomas has not established that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Exercising jurisdiction under 28 U.S.C. § 2253(a), we therefore DENY a certificate of appealability and DISMISS his appeal.

## I. Background[1]

Late at night on March 2, 2004, Thomas and his girlfriend drove from Denver, Colorado, to Rock Springs, Wyoming. En route, the two began arguing and Thomas became violent, hitting his girlfriend several times. When the couple neared Arlington, Wyoming, Thomas drove his Ford Explorer off the interstate

---

[1] These facts are taken from the Wyoming Supreme Court's opinion in *Thomas v. State*, 131 P.3d 348 (Wyo. 2006).

and onto a side road.  Seeing an opportunity to escape, Thomas's girlfriend attempted to jump out of the vehicle.

When the woman opened the passenger-side door, however, Thomas grabbed her by the arm and held her as he accelerated down the dirt road.  As she was dragged alongside the car, half of the woman's clothes—including her underwear—were torn from her body.  Unsurprisingly, she suffered severe injuries to her legs and torso.

When he finally came to a stop, Thomas got out of the car, dragged his girlfriend into a snow-covered field, and attempted to strangle her.  He stopped his attack before it was too late, and she survived.  But Thomas then abandoned the woman, leaving her to wander half-naked in the snow and freezing winter temperatures.

About an hour later, Thomas returned to the scene of the assault and apologized for his actions.  He offered to take his victim to the hospital; she agreed and got back into the car.  But instead of taking her where he promised, Thomas dropped her off at a hotel in Rock Springs where the two had been staying and left for work.

Still in dire need of medical attention—the woman suffered severe frostbite in addition to the physical injuries directly caused by Thomas's attacks—the woman called 911 and told a concocted story regarding her injuries.  A police officer arrived at the hotel and took her to the hospital.

Eventually, the woman told police what had actually happened, and Thomas was arrested. While in custody, Thomas revealed to police where the crime had occurred, and police officers recovered the victim's clothing from that location. Thomas was charged with one count of aggravated assault and battery and one count of kidnapping. Thomas pleaded not guilty to the charges and proceeded to trial.

The jury convicted Thomas of aggravated assault and battery, but found him not guilty of kidnapping. After obtaining these verdicts, the state court held an additional trial to determine whether Wyoming's habitual criminal statute, Wyo. Stat. Ann. § 6-10-201, applied to Thomas, who had been convicted of several felonies in the past. The jury determined the statute did apply; as a result, the court sentenced Thomas to life imprisonment.

Thomas appealed his conviction to the Wyoming Supreme Court. The court ruled against Thomas, and he filed a pro se state petition for post-conviction relief. After losing on his petition in the trial court, Thomas requested review in the Wyoming Supreme Court. The court denied review, and Thomas, again acting pro se, filed the instant habeas action.

The district court conducted a careful review of the record and Thomas's arguments. Though seven of his claims were arguably subject to procedural

default because they had not been raised in his direct criminal appeal,[2] the district court heeded its duty to treat pro se habeas litigants with solicitude, *see Yang v. Archuleta*, 525 F.3d 925, 927 & n.1 (10th Cir. 2008), and "[c]onstru[ed] his habeas petition *very* liberally," D. Ct. Order at 9 (emphasis in original). The district court reached Thomas's defaulted claims on the theory that they were subsumed within his claim for ineffective assistance of appellate counsel and were exempt from the normal procedural default rules. *See Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008). Even reaching all of Thomas's claims, however, the district court denied his habeas petition.

Thomas filed a notice of appeal, but the district court did not address whether he was entitled to a certificate of appealability (COA). *See Clark v. Oklahoma*, 468 F.3d 711, 713 n.2 (10th Cir. 2006) ("A COA is deemed denied if the district court does not address the issuance of a COA within thirty days." (citing 10th Cir. R. 22.1(C))). He now seeks a COA from this court to pursue nine of the eleven claims he asserted below.

---

   [2]  Wyoming law provides that, in the context of challenges to state criminal convictions, a constitutional claim is barred if it "[c]ould have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction." Wyo. Stat. Ann. § 7-14-103(a)(i). "We ordinarily do not review issues on habeas that have been defaulted in state court on an independent and adequate state procedural ground." *Boyle v. McKune*, 544 F.3d 1132, 1137 n.3 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1630 (2009).

## II. Analysis

"As mandated by federal statute, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). Before proceeding with such an appeal, the prisoner must obtain a COA from a district or circuit court. *Id.* If the prisoner fails to do so, we lack jurisdiction to hear his appeal. *Id.*

Under § 2253(c)(2), a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." This is a threshold inquiry that "does not require full consideration of the factual or legal bases adduced in support of the [petitioner's] claims." *Miller-El*, 537 U.S. at 336. Indeed, we need only conduct "an overview of the claims . . . and a general assessment of their merits." *Id.*

Here, because the district court addressed the merits of Thomas's claims in rejecting his § 2254 petition, we may grant a COA only if Thomas demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. After a careful review of the nine claims Thomas asserts in his application for COA, we conclude Thomas has failed to make the required showing. For substantially the same reasons the district court denied his habeas petition, we deny Thomas a COA.

**A.    Claim 1:  *Brady* Violation**

In his first claim, Thomas asserts that his prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963), when they failed to produce certain exculpatory evidence to the defense until the middle of trial.  Specifically, Thomas asserts the prosecution should have disclosed a taped police interview of the victim, as well as the actual vehicle driven by Thomas when he dragged his victim along the dirt road.  The Wyoming Supreme Court denied this claim on direct appeal, holding that because prosecutors disclosed this evidence prior to the end of trial, and Thomas's lawyer was able to make use of the evidence during trial, no due process violation occurred.  *Thomas v. State*, 131 P.3d 348, 353–54 (Wyo. 2006).

To prevail on his *Brady* claim, Thomas must show the Wyoming Supreme Court's resolution of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).  In the context of federal habeas corpus litigation, "clearly established Federal law" consists of the holdings of Supreme Court cases decided before the time the petitioner's state court conviction became final.  *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  Below, the district court determined the Wyoming Supreme Court reasonably followed pertinent federal law in denying Thomas's *Brady* claim and did not make any unreasonable factual determinations.

We agree with the district court, and nothing in Thomas's application for COA suggests jurists of reason could find the district court's conclusion "debatable or wrong." *Slack*, 529 U.S. at 484. It has long been the law of this circuit that, "[a]lthough this court strongly disapproves of delayed disclosure of *Brady* materials, '[a]s long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence, Due Process is satisfied.'" *United States v. Mendez*, 514 F.3d 1035, 1047 (10th Cir.) (quoting *United States v. Warhop*, 732 F.2d 775, 777 (10th Cir. 1984)), *cert. denied*, 128 S. Ct. 2455 (2008). Thomas cites no cases from the Supreme Court holding to the contrary. Thus, because the prosecution in this case made the relevant evidence available to defense counsel, and counsel successfully utilized the evidence, the Wyoming Supreme Court did not run afoul of § 2254(d) when it denied Thomas's *Brady* claim.

**B. Claims 2, 3, and 4: Evidentiary Errors at Trial**

In his second, third, and fourth claims, Thomas challenges certain evidence admitted at trial. Specifically, he claims the state trial court (1) erroneously admitted expert testimony pertaining to battered woman's syndrome, (2) erroneously admitted evidence regarding the impact of his crime on the victim, and (3) mishandled evidence of his prior bad acts. On direct appeal, the Wyoming Supreme Court addressed these claims and determined that each lacks merit. The district court analyzed the same claims under the rubric of federal

-8-

habeas law and determined that Thomas had failed to show the Wyoming Supreme Court made unreasonable determinations of law or fact under § 2254(d). We agree with the district court and conclude that Thomas has failed to show the district court's denial of his evidentiary claims was debatable or wrong as a constitutional matter.

*First*, with regard to the admission of expert testimony on battered woman's syndrome, there was no error. Thomas claims the state improperly proffered the evidence to prove he constantly abused his victim throughout their relationship. But the trial transcript reveals otherwise, and in fact reveals that Thomas's counsel opened the door to the expert testimony. In cross-examining the victim, Thomas's trial counsel insinuated the victim was lying about Thomas's assault, because during the drive from Denver to Rock Springs, she did not attempt to escape from Thomas. For example, Thomas's counsel suggested the victim could have escaped from Thomas prior to the assault when the couple stopped at a Wal-Mart in Denver: "I'm a connoisseur of Wal-Marts, and I have never been in a Wal-Mart where there isn't about fifty thousand people. You couldn't get away from [Thomas] in a Wal-Mart?" R. Vol. 1, Trial Tr. at 172. The victim answered, "You haven't had the devil with you, have you?" *Id*. Defense counsel also insinuated that the victim had lied about Thomas's abusive nature because she voluntarily maintained her relationship with Thomas for many years prior to the night of the assault: "All of these times that you had indicated

Mr. Thomas has beat you, . . . yet you still were going to go back down to Rock Springs with him?" *Id.* at 176. To this the victim replied, "I thought maybe if I loved him enough he would quit doing what he did . . . ." *Id.*

Thus, in light of the record, the prosecution did not proffer the expert testimony to prove Thomas had repeatedly abused the victim over the course of their relationship. Instead, the testimony was used to bolster the victim's credibility and explain her loyalty to Thomas despite his violent tendencies. Indeed, the expert himself testified that battered women can exhibit "illogical" behavior, and the syndrome can explain "why the [victim] . . . seems to go back and by choice reenter that [abusive] situation." R. Vol. 2, Trial Tr. at 142.

For years, federal courts have allowed experts to offer their opinions regarding battered woman's syndrome to explain the contradictory testimony of victims of abuse. *See, e.g.*, *United States v. Young*, 316 F.3d 649, 659 (7th Cir. 2002); *Arcoren v. United States*, 929 F.2d 1235, 1241 (8th Cir. 1991). Nothing in the record suggests admission of the expert testimony in this case was somehow improper, and more importantly, nothing suggests Thomas's constitutional rights were violated by its admission. Thomas points to no Supreme Court case suggesting the Wyoming Supreme Court unreasonably applied federal law in denying his claim regarding the expert testimony. He is not entitled to a COA on this claim.

***Second***, Thomas claims the Wyoming trial court erroneously admitted so-called "victim impact testimony" when it allowed the victim to testify in detail regarding the injuries she suffered as a result of Thomas's assault. Thomas claims the testimony was irrelevant and therefore inadmissible. He also asserts the testimony was patently false and was thus perjured. To prevail on these evidentiary claims, Thomas must not only show that an error occurred, he also must show the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

With regard to his challenge to the relevance of the victim's testimony, Thomas fails to reveal that the statute under which he was charged and convicted, Wyo. Stat. Ann. § 6-2-502(a)(i), required the prosecution to prove he caused "serious bodily injury to another." Wyoming law defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 6-1-104(a)(x). Thus, the victim's testimony, which described the medical consequences of her frostbite, the nerve damage she suffered from being dragged along the dirt road, and the surgeries she had been forced to undergo, was clearly relevant to an element of the charged crime. Nothing suggests Thomas's due process rights were violated by the admission of the testimony.

-11-

With regard to his claim of perjury, the jury had before it not only the victim's testimony, but the testimony of several doctors who treated her, along with photographs taken of her shortly after the assault. The jury clearly believed the victim's testimony was not fabricated, and "nothing in the record substantiates [Thomas's] assertion that [the victim's] testimony was false." *See Johnson v. Mullin*, 505 F.3d 1128, 1154 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 2933 (2008). Thomas's claim of perjury therefore fails.

***Third and finally***, with regard to the evidence of Thomas's prior bad acts, both the Wyoming Supreme Court and the federal district court held that the prosecutor improperly elicited inadmissible prior bad act testimony from the victim. Both courts, however, found that Thomas's constitutional rights were not violated, and in any event, the error regarding the prior bad act evidence was not grounds for reversal. To obtain a COA on the issue, Thomas must show the improperly admitted evidence so infected the trial with unfairness that he was denied due process, *see Romano*, 512 U.S. at 15, and he must also show the district court's resolution of the issue was debatable or wrong, *Slack*, 529 U.S. at 484.

Prior to Thomas's criminal trial, the state court held a hearing to determine the admissibility of testimony regarding certain of Thomas's prior bad acts—namely, three prior instances of his abuse of the victim. The court ruled that only the specifically enumerated prior bad acts could be discussed at trial and

-12-

they could only be admitted subject to a limiting instruction. *See Thomas*, 131 P.3d at 351. The instruction informed the jury that the evidence was to be used only to show Thomas possessed the requisite intent for aggravated assault and battery and did not cause the victim's injuries by mistake or accident. *Id*. Despite this ruling, the prosecution questioned the victim at trial about the general history of her relationship with Thomas. In response, the victim began discussing Thomas's violent tendencies and constant physical abuse, and discussed matters outside the scope of the pretrial ruling. Defense counsel objected, and the court immediately ended the questioning and called a recess to hear arguments from counsel.

During the recess, defense counsel moved for a mistrial, claiming the victim's discussion of the general nature of her relationship with Thomas was inadmissible and incurably prejudicial. The court agreed the testimony was improper, and ruled that "[w]e will not have any more general conversations [regarding] the length and depth of this relationship [between the victim and Thomas]." R. Vol. 1, Trial Tr. at 130. But the court denied the motion for mistrial and instead opted to give a limiting instruction to cure any alleged prejudice. *See id*.

Nothing about this chain of events denied Thomas his constitutional rights. Like the district court, we conclude that "[g]iven the trial court's immediate admonition and curative instruction prior to deliberations, coupled with the

-13-

weight of the evidence against Mr. Thomas, the victim's mention of Mr. Thomas' prior bad acts did not amount to a due process violation."  D. Ct. Order at 23; *cf. Patton v. Mullin*, 425 F.3d 788, 801 (10th Cir. 2005) (denying habeas relief for improperly admitted evidence in part because nothing in the record suggested the jury ignored the court's curative instruction).  Thomas has not shown that reasonable jurists would find this conclusion to be debatable or wrong, *Slack*, 529 U.S. at 484, and he is therefore not entitled to a COA on his prior bad act claim.

### C.    Claims 5, 6, 7, 8, and 9:  Ineffective Assistance of Appellate Counsel

The district court addressed Thomas's remaining claims in the context of ineffective assistance of appellate counsel, reasoning that because the claims were not presented in Thomas's direct criminal appeal, they could be reached in federal habeas proceedings only under an ineffective assistance of appellate counsel theory.[3]  In his application for COA, Thomas agrees he raised these issues "through the portal of ineffective assistance of appellant [sic] counsel."  Application for COA at 62.  Even considering these claims, however, the district

---

[3] Thomas raised ineffective assistance of appellate counsel in his state petition for post-conviction relief.  *See* R. Vol. 2, Pet. for Post-Conviction Relief. The state trial court, however, declined to address the claim in its decision letter. *Id.*, Wyo. D. Ct. Decision Letter.  In light of the state court's decision not to address the claim, the district court properly analyzed Thomas's claim of ineffective assistance of appellate counsel de novo.  *See Williams v. Jones*, 571 F.3d 1086, 1090 (10th Cir. 2009).

court denied Thomas habeas relief, and nothing in Thomas's application for COA suggests the district court's decision was debatable or wrong.

As we do with ineffective assistance of trial counsel claims, we analyze claims of ineffective assistance of appellate counsel under the two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). *See Coronado v. Ward*, 517 F.3d 1212, 1216 (10th Cir.), *cert. denied*, 129 S. Ct. 134 (2008). Under that test, a habeas petitioner can succeed on an ineffective assistance claim only if he shows (1) his appellate counsel's performance was somehow deficient and (2) he suffered prejudice as a result of this deficient performance. *Id*.

As did the district court, we have thoroughly examined the record, and we conclude the performance of Thomas's appellate counsel was not constitutionally deficient. Although Thomas asserts his appellate counsel should have made various additional arguments on appeal, Thomas fails to show that these additional arguments have any merit. *See Boyle v. McKune*, 544 F.3d 1132, 1140 (10th Cir. 2008) ("Appellate counsel cannot be deficient for failing to raise a frivolous argument."). For example, Thomas suggests that if his trial and appellate counsel had more thoroughly investigated and presented exculpatory evidence to the trial and appellate courts, he could have refuted his victim's testimony and his appeal would have come out differently. But Thomas's argument largely rests on his assertion that he did not drag his victim down the dirt road; instead, he claims the victim "jumped from the vehicle and became

entangled with the door and was dragged until petitioner realized the situation and immediately stopped." Application for COA at 30. This version of the facts fails to disprove that Thomas attempted to strangle his victim, and it fails to explain why Thomas left his victim to wander in freezing temperatures and suffer severe frostbite and why he decided against taking his victim to the hospital immediately after she suffered her severe injuries. His other arguments are similarly weak and nothing in the record suggests they would have changed the result of his direct appeal if considered by the Wyoming Supreme Court.[4]

In sum, Thomas has failed to show that the district court's denial of his ineffective assistance of appellate counsel claim was debatable or wrong. For substantially the same reasons the district court denied this claim, we conclude Thomas is not entitled to a COA.

---

[4] In his application for COA, Thomas makes many arguments regarding his appellate counsel's ineffectiveness that he failed to raise in his petition for federal habeas corpus and in his briefing in the district court. *See, e.g.*, Application for COA at 51–54. In the habeas context, as in other contexts, we do not ordinarily address issues not presented to the district court. *See Gardner v. Galetka*, 568 F.3d 862, 885 n.3 (10th Cir. 2009); *McLuckie v. Abbott*, 337 F.3d 1193, 1200 n.3 (10th Cir. 2003). We therefore decline to address issues in Thomas's COA that were not presented to the district court.

### III.  Conclusion

For the foregoing reasons, we DENY Thomas a COA and DISMISS his appeal.

<div style="margin-left:auto;width:50%">

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

</div>