# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 140

OCTOBER TERM, A.D. 2015

November 6, 2015

JOHN WALLACE MCGINN,

Appellant
(Defendant),

v.                                                              S-14-0251

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Peter G. Arnold, Judge*

*Representing Appellant:*
> Timothy C. Kingston, Law Office of Tim Kingston, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
> Peter K. Michael, Attorney General; John G. Knepper, Chief Deputy Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General.  Argument by Mr. Knepper.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*BURKE, Chief Justice, delivers the opinion of the Court; FOX, Justice, files a specially concurring opinion, in which KITE, Justice (Ret.), joins.*

*\* Justice Kite retired from judicial office effective August 3, 2015, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015), she was reassigned to act on this matter on August 4, 2015.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    John Wallace McGinn was found guilty by a jury of domestic battery and possession of a weapon with intent to threaten.  Mr. McGinn testified at trial, and, over the objections of defense counsel, the prosecutor asked him a series of questions in which she repeated statements made by his daughter and asked, "was she lying?"  Prior to trial, at a hearing on the State's Rule 404(b) notice, the district court ruled that evidence regarding prior discharge of a gun would be admissible.  Mr. McGinn appeals, contending the "was she lying" questions constitute prosecutorial misconduct, and that the trial court abused its discretion when it allowed the prior discharge evidence.  We reverse.

*ISSUES*

[¶2]        1.    Were the prosecutor's improper "was she lying" questions prejudicial to Mr. McGinn?

            2.    Did the district court abuse its discretion when it allowed evidence of prior discharge of the gun?

*FACTS*

[¶3]    Mr. McGinn and his wife, Shari Swenson, lived in Cheyenne, Wyoming, with their eight-year-old daughter, K.  Ms. Swenson worked long hours, and Mr. McGinn was a stay-at-home dad.  On the day after Thanksgiving 2012, Mr. McGinn was at home with K and he instructed her to fold the laundry.  K balked, and swung at him, and Mr. McGinn testified that he gave her a "swat on her bottom, not very hard, and I sen[t] her to her room." [1]  He then called Ms. Swenson and told her that K had been misbehaving.

[¶4]    Ms. Swenson got home later that evening and found K in her playroom, where she reported that she had been hurt by Mr. McGinn.  Ms. Swenson confronted Mr. McGinn, and the two embarked upon a fight that lasted several hours.  At some point, the fight ceased being merely verbal.  Ms. Swenson testified:

> I stood up and I got in his face.  He told me that he was the
> meanest son of a bitch that I'd ever seen.  He backhanded me,
> and he proceeded down the hallway out of my eyesight.

---

[1] At trial, K testified that she was subjected to more extensive corporal punishment by Mr. McGinn, but because Mr. McGinn was acquitted of the felony child abuse charge, we do not accept those facts as true.

1

[¶5]    Ms. Swenson heard Mr. McGinn go into the bedroom and open the nightstand drawer where he kept his handgun.  He came down the hall with the gun in his hand, waving it around, and said, "I'm not afraid to use this on you or anybody else.  I'm not afraid to go to prison.  I'm not afraid of any of that."  Then Mr. McGinn went down to the basement, and when he came back up Ms. Swenson did not see the gun again.  Meanwhile, Ms. Swenson packed some things for herself and K.  The two got in her truck and left.  The next day Ms. Swenson reported the incident to the Cheyenne police, who took their statements and photographs.  Photos showed a lump over Ms. Swenson's left eye and some swelling around K's right eye and bruising on her back.  Mr. McGinn was charged with child abuse, domestic battery, and possession of a weapon with intent to threaten.

[¶6]    At trial, Ms. Swenson testified to previous incidents involving the gun.  In spring 2012, Mr. McGinn was cleaning the gun and told Ms. Swenson he wanted to show her something.  The gun discharged and the bullet went through the bathroom wall and into the foundation of the neighbors' house.  Although Ms. Swenson believed at the time that the discharge was an accident, at trial she testified:

> It could have been a misfire.  It could have been an accidental discharge.  It could have been a scare tactic.  I don't know at this point.

[¶7]    Ms. Swenson also testified to approximately five other occasions during which she locked herself in K's room and could hear Mr. McGinn outside the door with the gun.  "[H]e would cock it, load it and unload it, so I could hear it."  On one of those occasions she saw Mr. McGinn with the gun in his hands.

[¶8]    Mr. McGinn testified at trial.  His testimony regarding the laundry incident differed significantly from K's.  On cross-examination, the prosecutor referred to specific statements K had made in her forensic interview and asked Mr. McGinn whether K was lying.

> Q.    She says she was folding laundry and you slapped her on the face.  Is that true?
>
> A.    No, it's not true again for the second time.
>
> Q.    So she's lying?
>
> A.    I'm not saying that my daughter is lying.  I'm going to say that Shari's – that Shari's speaking, not her.

2

> Q. She says she started crying then. Is she lying about that?
>
> . . .
>
> A. I never slapped her, so I don't know how you would like me to answer that.
>
> Q. The answer is yes or no. She says you slapped her and then she started crying. Is she lying, yes or no?

[¶9] Defense counsel objected, noting that his client should not have to call his daughter a liar to explain what happened. The district court overruled the objection, and the same pattern of questions continued. The prosecutor asked approximately 20 "was she lying" questions. Then, upon defense counsel's renewed objection, the district court instructed the jury:

> Ladies and gentlemen, that's a good point. Who is being honest and who is being dishonest is for you to decide. The questions I've allowed asked Mr. McGinn whether his daughter was being honest. There's a difference between the two. Or whether he thought his daughter was being honest.

[¶10] After that instruction, the prosecutor changed her questions regarding K's version to "Is that true or not true?" At the close of the testimony, defense counsel moved for a mistrial on the basis of the "was she lying" questions. The district court denied the motion, explaining that the tactic was necessary in this case, where Mr. McGinn "forcefully" denied the facts testified to by his wife and daughter.[2] In her closing

---

[2] The trial judge explained his reasons for permitting those questions:

> All right. I understand your concern, [counsel for McGinn], but I think it's important for me to put on the record what may not appear otherwise on the record.
>
> Mr. McGinn, from my personal observation of his demeanor on the stand, forcefully denied doing the things that his wife and his daughter testified to. By "forcefully," I mean it is clear on the record the words he used, but when he used those words, he turned intentionally to the jury and said such things as "absolutely not."
>
> When you, [counsel for McGinn], were asking questions, the only explanation of how this case is to be resolved is to determine who is telling the truth. There is some physical evidence, although the impact of that physical evidence being the photographs is disputed. But the overwhelming majority of the evidence that Mr. McGinn committed

argument, the prosecutor again referenced the "lying" testimony, saying "He said that she was lying to every single thing that makes him [look] bad."

[¶11]  The district court called a recess after the prosecutor's closing and informed the parties that it had researched the propriety of the "was she lying" questions and concluded that "[s]uch questions are improper and the use of them amounts to misconduct."  Defense counsel then renewed his motion for a mistrial, which the court denied.  When the jury returned, the court advised:

> You will recall that the State asked a number of questions of Mr. McGinn, whether he was lying or whether his daughter and wife were lying.  Those questions were improper.  And I am instructing you to disregard the questions and the answers.

---

these crimes is based upon the testimony of his daughter and his wife.

The defense spent a large amount of time attempting to demonstrate to the jury how much Mr. McGinn loves his daughter, how well they got along, how happy they were, the efforts he made to participate in her school events.  And his body language was such that he—and I will describe that—he was lounging back in the chair, attempting to demonstrate a great air of confidence.  He was smiling.  He was, in my view, smirking.  He was fidgeting.  He was dry-mouthed.  He repeatedly took drinks of water.  I don't know how much of any [of] that the jury observed or shares.  My categorization of those observations doesn't matter.

Normally, it would be improper for an examining attorney to ask a witness whether or not another witness is lying.  But in this case, essentially the only evidence in this case is the testimony of Mr. McGinn and Ms. Swenson and [K].  And the questions directed to Mr. McGinn were worded so that the question was whether he believed his daughter was lying.  Obviously, the insinuation is, is she lying?  And the only explanation the defense has is that the two of them are lying.

Mr. McGinn tried to equivocate saying, "Well, I think that my wife in essence put her up to it."  But assuming that's the case, that would presume that [K] knew it wasn't true but said it anyway, which is equivalent to lying.  I believe that . . . the in-court-physical circumstances coupled with the unavoidable conclusion that one or the other is lying enabled the State to take that stance.

Understandably, I might have preferred to have those—or that position submitted in closing argument rather than in cross-examination.  But the jury has to evaluate credibility, and the only way they can do that is to determine whether a man who professes to love his daughter so much that she is his entire life, how he would explain that his daughter would testify in the fashion that she did.  I think the State was allowed to do that.  And I will deny the motion [for a mistrial].

4

[¶12] The jury acquitted Mr. McGinn of felony child abuse and found him guilty of the two other charges. He was sentenced to four months for the battery conviction and four to five years for possession of a weapon with intent to threaten, suspended in favor of five years of probation. He timely appealed.

## *STANDARD OF REVIEW*

[¶13] We review allegations of prosecutorial misconduct[3] under the plain error standard if there has been no objection at trial. *Carroll v. State*, 2015 WY 87, ¶ 31, 352 P.3d 251, 259 (Wyo. 2015). Where, as here, there has been an objection below, we apply a harmless error standard of review.

> Whether such misconduct has been reviewed on the basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, this Court has focused on whether such error . . . affected the accused's "substantial rights." The accused's right to a fair trial is a substantial right. Wyo. Const. art. 1, §§ 6, 9, and 10; *and see, e.g., Jones v. State*, 580 P.2d 1150, 1154 (Wyo. 1978). Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused.

*White v. State*, 2003 WY 163, ¶ 7, 80 P.3d 642, 646 (Wyo. 2003) (quoting *Earll v. State*, 2001 WY 66, ¶ 9, 29 P.3d 787, 789 (Wyo. 2001)). "To demonstrate harmful error, the defendant must show prejudice under 'circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play.'" *Phillips v. State*, 2007 WY 25, ¶ 8, 151 P.3d 1131, 1134 (Wyo. 2007) (quoting *Condra v. State*, 2004 WY 131, ¶ 7, 100 P.3d 386, 389 (Wyo. 2004)).

## *DISCUSSION*

[¶14] We have held repeatedly that "[a] witness may not comment on the truthfulness or veracity of another witness." *Barnes v. State*, 2011 WY 62, ¶ 11, 249 P.3d 726, 730

---

[3] We have defined "prosecutorial misconduct" as "[a] prosecutor's improper or illegal act (or failure to act), esp. involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Craft v. State*, 2013 WY 41, ¶ 13, 298 P.3d 825, 829 (Wyo. 2013) (quoting *Black's Law Dictionary* 1237 (7th ed. 1999)).

(Wyo. 2011); *Schreibvogel v. State*, 2010 WY 45, ¶ 41, 228 P.3d 874, 888 (Wyo. 2010); *Huff v. State*, 992 P.2d 1071, 1079 (Wyo. 1999). It is the province of the jury to weigh the credibility of witnesses. *Beaugureau v. State*, 2002 WY 160, ¶ 17, 56 P.3d 626, 636 (Wyo. 2002).

[¶15] It is "misconduct for the prosecutor to cross-examine a defendant using the 'lying' or 'mistaken' technique (*i.e.*, well, then if 'so-and-so' said 'such-and-such,' was he 'mistaken' or 'lying?')." *Barnes*, ¶ 9, 249 P.3d at 728 (quoting *Beaugureau*, ¶ 17, 56 P.3d at 635-36). These questions are improper because they "require a defendant to comment on another witness' veracity . . . invade the province of the jury, create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the other witnesses lied, and distort the state's burden of proof." *Barnes*, ¶ 9, 249 P.3d at 729. *See also Proffit v. State*, 2008 WY 114, ¶ 15, 193 P.3d 228, 235 (Wyo. 2008); *Talley v. State*, 2007 WY 37, ¶ 11, 153 P.3d 256, 260 (Wyo. 2007); *Jensen v. State*, 2005 WY 85, ¶ 20, 116 P.3d 1088, 1096 (Wyo. 2005). "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Beaugureau*, ¶ 16, 56 P.3d at 634 (quoting *Stephens v. State*, 774 P.2d 60, 63 (Wyo. 1989), *overruled on other grounds by Large v. State*, 2008 WY 22, ¶ 30, 177 P.3d 807, 816 (Wyo. 2008)).

[¶16] The State concedes that the questioning was improper. It contends, however, that the error was harmless. To determine whether prosecutorial conduct was harmless, this Court balances the following factors: "1) the severity and pervasiveness of the misconduct; 2) the significance of the misconduct to the central issues in the case; 3) the strength of the State's evidence; 4) the use of cautionary instructions or other curative measures; and 5) the extent to which the defense invited the misconduct." *Barnes*, ¶ 11, 249 P.3d at 730 (quoting *Schreibvogel*, ¶ 42, 228 P.3d at 888).

[¶17] First, the misconduct was certainly severe and pervasive. The prosecutor asked some version of the "was she lying" question more than twenty times[4] on cross-examination, and again referred to it in her closing argument. We have found far fewer of those questions to be objectionable in our prior cases. *Barnes*, ¶ 13, 249 P.3d at 731 (6 times); *Schreibvogel*, ¶ 40, 228 P.3d at 887-88 (3 times); *Proffit*, ¶¶ 13-14, 193 P.3d at 234-35 (6 times); *Talley*, ¶ 12, 153 P.3d at 260-61 (5 times); *Beaugureau*, ¶ 15, 56 P.3d at 633 (3 times).

[¶18] Second, the State argues that the significance of the misconduct to the central issue in the case is a factor that should weigh in its favor, because the primary focus of the "was she lying" questions was K's testimony, which was relevant to the child abuse

---

[4] We again note that the majority of those questions were asked with the trial court's approval.

charge of which Mr. McGinn was acquitted. We note that the jury's decision on the child abuse charge was not necessarily based on a credibility determination, but may have resulted from a failure of proof of the "inflicted physical injury" element, as defined in Wyo. Stat. Ann. § 14-3-202(a)(ii)(B) (LexisNexis 2015) ("any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition").

[¶19] The State's argument overlooks the fact that the real damage caused by the "was she lying" questions is to make the defendant look bad, especially when the person who is accused of lying is as sympathetic as K. In *Barnes*, we recognized that the "predominant, if not sole, purpose of such questioning is simply to make the defendant look bad," and we quoted with favor the Iowa Supreme Court's statement that:

> Unfairly questioning the defendant simply to make the defendant look bad in front of the jury regardless of the answer given is not consistent with the prosecutor's primary obligation to seek justice, not simply a conviction. Nor is such questioning consistent with the prosecutor's duty to the defendant to ensure a fair trial, including a verdict that rests on the evidence and not on passion or prejudice.

*Barnes*, ¶ 9, 249 P.3d at 729 (quoting *State v. Graves*, 668 N.W.2d 860, 873 (Iowa 2003)).

[¶20] This case, as the State concedes, "depended on which witness was credible to the jury." As the trial court noted: "There is some physical evidence, although the impact of that physical evidence being the photographs is disputed. But the overwhelming majority of the evidence that Mr. McGinn committed these crimes is based upon the testimony of his daughter and his wife." If Mr. McGinn's credibility was diminished by the "was she lying" questions, it was diminished for all purposes. The effect of making Mr. McGinn look bad could not be confined to the particular charge about which he was being questioned, but necessarily injected prejudice into the jury's consideration of all of the charges. We therefore find the second factor weighs against the State.

[¶21] Third, we consider the strength of the State's evidence. As mentioned above, there was very little physical evidence and the decision rested on the witnesses' credibility. The district court, in explaining its reasons for allowing the "was she lying" questions, included its belief that "the state of the evidence is such that there is not much else to support the State's claims other than the testimony of Ms. Swenson and [K]." Under these circumstances, this factor also weighs against the State.

[¶22] Fourth, we consider whether the district court's curative instructions were

sufficient to cure the error. The district court overruled defense counsel's objections to the first series of the "was she lying" questions. After several more of those questions and a renewed objection, the court sustained the objection, and then gave an instruction that seemed only to add to the confusion. *See supra* ¶ 9.

[¶23] The instruction did not address the fundamental impropriety of the "was she lying" questions and did not cure the error. The prosecutor then proceeded to ask further questions in the same vein and again referred to the lying testimony in her closing. Only after the prosecution's closing did the district court inform the jury that those questions were improper and instruct them to disregard those questions.

[¶24] The State contends that the judge's instruction, along with the standard jury instructions that informed the jury that it is the province of the jury to make determinations of credibility, to determine the issues of fact, and to disregard matters that the judge orders to be stricken, is adequate to cure the error. We disagree. The pervasive nature of the objectionable questions and the lapse in time between the questions and the curative instruction compel the conclusion that the damage done could not be undone. These facts are in stark contrast to *Beaugureau*, in which the prosecutor asked three improper "was s/he lying" questions, and each time defense counsel's objection was immediately sustained by the trial court. *Id.*, ¶ 15, 56 P.3d at 633. Further, in this case, the instruction to jurors to disregard matters stricken is of limited utility when the damage was not as to any fact, but rather was in the impression created of a defendant who repeatedly accused his young daughter of lying.

[¶25] Finally, we look to the extent to which the defendant invited the conduct. It is difficult to conceive of a situation in which prosecutorial misconduct would be justified by any action taken by the defendant; however, we need only decide here that Mr. McGinn's assertion of a different version of events than that testified to by Ms. Swenson and K is not a sufficient basis for finding that he invited such questions. Different stories requiring a jury to determine the credibility of witnesses are the norm, and do not justify use of "was she lying" questions.

[¶26] In sum, use of the improper questions was pervasive; it was intended to undermine the credibility of the defendant in a case where credibility was the central issue. The State's case was not strong and efforts to cure the error came too late and were ineffective. Appellant did not invite the error and defense counsel interposed timely objections to the improper questions. Based upon the foregoing, we must conclude that the error was prejudicial. There is a reasonable possibility that, absent the error caused by the "was she lying" questions, the verdict might have been more favorable to Mr. McGinn. Mr. McGinn's conviction must be reversed.

[¶27] Before leaving the subject of prosecutorial misconduct, we find it worthwhile to comment on Appellant's request that we depart from our precedent requiring an appellant

to establish that he was prejudiced by the misconduct. He contends that we should require the State to establish a lack of prejudice when prosecutorial misconduct has occurred. Because we conclude that Appellant would have prevailed under either standard, resolution of this issue does not impact the outcome of the present case. Nonetheless, in the interest of providing guidance for future cases, it seems prudent to comment briefly on the merits of the approach urged by Appellant.

[¶28] Appellant's suggestion that we depart from our precedent implicates the doctrine of *stare decisis*. Under that doctrine, departure should occur only upon due reflection and only if we are convinced that it is necessary to "vindicate plain, obvious principles of law and remedy continued injustice." *Borns v. Voss*, 2003 WY 74, ¶ 26, 70 P.3d 262, 271 (Wyo. 2003). In other words, we should depart from our precedent only when there is good reason to do so. Appellant has failed to convince us that departure from our precedent is warranted.

[¶29] Appellant relies principally upon Justice Voigt's concurring opinion in *Schreibvogel*, ¶ 52, 228 P.3d at 890. The sole justification for shifting the burden, as suggested in that opinion, was the possibility of deterrence. According to Justice Voigt, "[p]erhaps the State would pay attention to the law if it bore the burden of proof as to the lack of prejudice." *Id*. If changing the burden of establishing prejudice would eliminate the problem, we would perhaps be inclined to take that step. From our perspective, however, the deterrent effect of such a change is highly questionable.

[¶30] Our precedent unequivocally prohibits use of "were they lying" questions by a prosecutor. We have previously reversed convictions for prosecutorial misconduct identical to the conduct at issue here. If the threat of reversal will not deter the misconduct, shifting the burden of establishing prejudice on appeal is unlikely to have any effect on this behavior. Shifting the burden cannot dissuade the prosecutor who is unaware of our precedent. Shifting the burden is also unlikely to deter the prosecutor who knows such questions are improper but chooses to ask them anyway. We are left unconvinced that changing the burden would have any impact on prosecutorial behavior.

[¶31] It should also be noted that Appellant is seeking a special harmless error rule only for prosecutorial misconduct. He is not claiming that we should change the burden of establishing prejudice in other cases involving a harmless error analysis. He has not cited to any authority from any jurisdiction that supports his position.

[¶32] In general, there are two approaches to addressing the element of prejudice in a nonconstitutional harmless error analysis.[5] Some jurisdictions, including Wyoming,

---

[5] Where the alleged error is of constitutional magnitude the burden is on the prosecution to convince this

9

place the burden on the appellant to establish prejudice. Others place the burden on the party seeking to benefit from the error to establish a lack of prejudice.[6] 24 C.J.S. *Criminal Law* § 2384. Regardless of which approach is utilized, courts apply the same burden whether the error is classified as procedural, evidentiary, prosecutorial misconduct, or some other form of nonconstitutional error.

[¶33] Under the approach urged by Appellant, the burden of establishing prejudice would remain with Appellant if the error was classified as "evidentiary." If deemed to be prosecutorial misconduct, the burden would be on the State to establish a lack of prejudice. However, not every "evidentiary error which favors the State would be considered prosecutorial misconduct." *Craft*, ¶ 13, 298 P.3d at 829.[7] Absent some deterrent effect, there is nothing to be gained by treating prosecutorial misconduct harmless error differently than other forms of nonconstitutional harmless error. A consistent approach, applying the same analysis to all forms of nonconstitutional harmless error is preferable. The focus should be on the effect of the error, not the classification of the error.[8]

[¶34] Although we need not address any further issues, because it is likely to arise again on remand, we will comment on the admissibility of uncharged misconduct evidence. When there has been an objection, this Court reviews challenges to the admission of evidence for an abuse of discretion. *Cardenas v. State*, 2014 WY 92, ¶ 7, 330 P.3d 808, 810 (Wyo. 2014). A trial court's ruling on the admissibility of uncharged misconduct evidence is entitled to considerable deference, "'and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.'" *Id*. (quoting *Gonzalez-Ochoa v. State*, 2014 WY 14, ¶ 11, 317 P.3d 599, 603 (Wyo. 2014)). "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206-07 (Wyo. 2007). "In this context, 'reasonably' means sound judgment exercised with regard to what is right under

---

Court beyond a reasonable doubt that the error was harmless. *Vigil v. State*, 2004 WY 110, ¶ 19, 98 P.3d 172, 179 (Wyo. 2004); *Campbell v. State*, 589 P.2d 358, 367 (Wyo. 1979).

[6] Most of the cases cited in the concurring opinion are from jurisdictions that utilize this approach.

[7] In this case, the issue could have been avoided if the district court had sustained the initial objection to the improper questioning. Arguably, the error claimed by Appellant could be deemed evidentiary and the issue stated: "Did the district court abuse its discretion in permitting the prosecutor to ask improper questions?" *See, e.g.,* Issue 2 as stated by Appellant: "If the prosecutor engaged in misconduct, should the Appellant have to prove prejudice, or should the [S]tate be required to prove that the Appellant was not prejudiced?"

[8] Whether we should join those jurisdictions that place the burden on the party benefitting from the error, regardless of the type of harmless error, is not a question that is before us.

the circumstances and without being arbitrary or capricious." *Id*., ¶ 8, 150 P.3d at 1207 (citing *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006)). "Even if a district court abused its discretion in admitting uncharged misconduct evidence, we must also determine whether the error was prejudicial." *Mersereau v. State*, 2012 WY 125, ¶ 17, 286 P.3d 97, 106 (Wyo. 2012) (citing *Rolle v. State*, 2010 WY 100, ¶ 9, 236 P.3d 259, 264 (Wyo. 2010)). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Mersereau*, ¶ 17, 286 P.3d at 106.

[¶35] In *Gleason*, we outlined the "mandatory procedure" first set forth in *Vigil v. State*, 926 P.2d 351, 357 (Wyo. 1996), for testing the admissibility of uncharged misconduct evidence:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002). We further noted that the test is not to be used in appellate review; "rather, it is intended to be conducted by the trial court." *Id*.

[¶36] Mr. McGinn filed Defendant's Motion to Require Specific Statement of 404(b) Evidence and Demand for Hearing on November 13, 2013.[9] In response, the State filed its Notice of Specific Instances of Conduct under W.R.E. 404(b), which included the following:

> Ms. Swenson will testify that in the Spring of 2012, when the Defendant threatened her with a gun, he shot it off an inch from her face and called it a "misfire," although she believes he did it to scare her.

The State's pleading also included an extensive "Proper Purpose Analysis" in support of the admission of 404(b) evidence.

---

[9] Such a motion is treated as a timely objection to 404(b) evidence. *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002).

[¶37]  The district court held a motion hearing December 16, 2013, at which a number of issues were discussed, including the 404(b) issue pertaining to the spring 2012 discharge. At the hearing, the district court stated:

> Well, I'm – of course, we all struggle, but the law – and very properly has evolved as to 404(b) so that notice is given, objections are assumed, placing the proponent of such evidence in a position, especially if it's a criminal case, and it's the prosecutor, of proving up the need.  It then evolved to not only a list of factors, but eventually into a requirement that we not only conduct such a hearing, but if I'm going to allow it, I have to make findings.  And all that's fine, but then we're still here.  Maybe it comes up in cross-examination.  Maybe it doesn't.  Maybe it is made relevant following the testimony of witnesses.
>
> Maybe the Defendant even testifies.  Of course, that places his character under 404(a) maybe, but certainly – certainly not until then, and you might have five witnesses that aren't him that don't say anything about character.  So it has become my practice to hear from you all, make the findings necessary to get us to the start of the trial, and caution you, and I'll caution you now, and you might get it in an order as well, that the rulings of the Court are fact and maybe even witness specific.  So [defense counsel] has to worry that – and plan accordingly, that it might – we might be arguing this at a bench conference at some point during the trial.

[¶38]  The Order that was issued January 15, 2014, contained the following:

> IT IS FURTHER ORDERED THAT the Defendant's resistance to the States' [sic] notice of evidence to be admitted pursuant to Rule 404(b) of the W.R.E. is a sufficient objection to the use of that evidence, and that noticed evidence will not be permitted in the States [sic] case in chief at trial with the exception of evidence of the Defendant's prior use and habits concerning his firearm as such evidence relates to the issue of intent as required to be proven in Count III.

[¶39]  At trial, Ms. Swenson testified about the spring 2012 discharge without further objection.  The district court's order identifies the purpose for admission of the 2012

12

discharge evidence, finding that it "relates to the issue of intent." We can also glean from the hearing transcript that the district court recognized that the evidence was relevant, and that the evidence had a prejudicial effect.[10] The jury was instructed that it should consider prior acts evidence "only on the issue of the Defendant's intent." We can find nowhere in the record, however, any weighing by the district court of the probative versus prejudicial value of the evidence. In *Gleason*, we set forth a comprehensive list of factors that the trial court should consider in determining the probative value of prior bad acts evidence. *Id.*, ¶ 27, 57 P.3d at 342. Although we recognized that "express findings on *each* factor are not necessary, abuse of discretion, or the lack thereof, cannot be determined by reviewing a record that contains no information as to how that discretion was exercised." *Id.*, ¶ 28, 57 P.3d at 343 (emphasis in original). Recently, in *Carroll*, 352 P.3d 251, we reviewed a challenge to the trial court's decision allowing evidence of the appellant's prior convictions. After describing the district court's thorough analysis of each of the *Gleason* factors, *Id.*, ¶¶ 13-16, 352 P.3d at 255-56, we concluded that "[t]he district court's thoughtful discussion documents a reasonable decision based on sound judgment." *Id.*, ¶ 17, 352 P.3d at 256. No such discussion appears in this record. The absence of appropriate findings and discussion hinders review of the district court's decision to admit the evidence. On remand, the district court should weigh the uncharged misconduct evidence and, if it deems the evidence admissible, provide an explanation for its decision in accordance with the law discussed.

[¶40] We reverse and remand to the district court for further proceedings in conformance with this opinion.

---

[10] The court stated as follows:

> And that misfire, pretty dramatic thing to set a gun off next to someone's head, and dry firing through a door during prior violent incidents, or prior confrontations goes straight to intent. It's almost like it's almost – you can almost not doubt the relevance. It's just, as you said, like the conduct is ten times worse than what he did on this day.

**FOX, Justice,** specially concurring, in which **KITE, Justice (Ret.),** joins.

[¶41] I concur in the result, but I write separately because I believe the burden of demonstrating harmless error from prosecutorial misconduct should be on the beneficiary of the error.

[¶42] The United States Supreme Court has imposed the burden to demonstrate harmless error on the prosecution for many years. *See, e.g., Kotteakos v. United States*, 328 U.S. 750, 760, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557 (1946) ("If the error is of such a character that its natural effect is to prejudice a litigant's substantial rights, the burden of sustaining a verdict will . . . rest upon the one who claims under it."). "[L]ater cases have made it clear that, unlike plain error analysis that places on the defendant the burden of demonstrating prejudice, harmless error requires the prosecutor to disprove prejudice." 3B Charles A. Wright et al., *Federal Practice and Procedure* § 854, at 506 (4th ed. 2013).

[¶43] Federal courts distinguish between the burden of showing harmless error under F.R.Cr.P. 52(a), which is imposed on the government, and the burden of showing prejudice occurred under the F.R.Cr.P. 52(b)[11] plain error standard, in which case it "is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (applying the plain error standard). *See also United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011) ("[W]hen a defendant fails to object to an allegedly improper statement during trial, we will 'review only for plain error and it is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.'" (citation omitted)). When, as here, a timely objection has been made by the defendant, the burden should shift to the State to show that the prosecutorial misconduct did not result in prejudice to the defendant.

[¶44] Several state courts also allocate the burden to the prosecution to show that nonconstitutional error was harmless. *See, e.g., State v. Dolloff*, 58 A.3d 1032, 1043 (Me. 2012) (The State must persuade us that "it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments."); *State v. Akins*, 315 P.3d 868, 882 (Kan. 2014) ("The State bears the burden of proving the misconduct was harmless error."); *State v. Hill*, 801 N.W.2d 646, 654 (Minn. 2011) ("[T]he State bears the burden of persuasion on claims of prosecutorial misconduct to demonstrate that 'the misconduct

---

[11] W.R.Cr.P. 52 is substantially identical to the federal rule. *Pena v. State*, 2013 WY 4, ¶ 48, 294 P.3d 13, 22 (Wyo. 2013) ("In construing Wyoming rules of procedure, where Wyoming and federal rules of procedure are similar, we have repeatedly looked to federal cases construing the federal rule as persuasive authority." (citation omitted)).

14

did not affect substantial rights.'" (citation omitted)); *Guzman v. State*, 868 So.2d 498, 507 (Fla. 2003) ("[O]nce a defendant has established that the prosecutor knowingly presented false testimony at trial, the State bears the burden to show that the false evidence was not material[.]").

[¶45] Justice Voigt (then Chief Justice) suggested this approach in his special concurrence in *Schreibvogel v. State*, 2010 WY 45, 228 P.3d 874 (Wyo. 2010):

> I concur in the result reached by the majority because *stare decisis* requires us to place upon the appellant the impossible task of proving prejudice in cases such as this. The majority states the well-established law in Wyoming: "It is error and misconduct for a prosecutor to ask a witness whether he thinks other witnesses are 'lying' or 'mistaken.'" Yet the prosecutor in this case asked the appellant not once, but three times, whether another witness—the bartender, the victim, and the cellmate—was incorrect or mistaken. Perhaps the State would pay attention to the law if it bore the burden of proof as to the lack of prejudice.
>
> . . . .
>
> My concern is that, while the harmless error rule certainly makes sense as a reasonable systemic tool, its actual application via a process that requires each appellant to prove that he or she has been prejudiced by prosecutorial misconduct, leaves the State nearly unfettered in its ability to do as it pleases, this Court's opinions to the contrary notwithstanding.

*Id*. at ¶¶ 52, 54, 228 P.3d at 890-91 (Voigt, C.J., specially concurring) (citations omitted). The Court again signaled its interest in shifting the burden in such cases in *Barnes v. State*, 2011 WY 62, ¶ 12, 249 P.3d 726, 730-31 (Wyo. 2011).

[¶46] This Court has previously allocated the burden to the State of showing harmless error beyond a reasonable doubt in cases of constitutional error. "The *Chapman* standard requires the appellate court to be convinced beyond a reasonable doubt no reasonable possibility exists that the error contributed to the jury's determination." *Vigil v. State*, 2004 WY 110, ¶ 21, 98 P.3d 172, 180 (Wyo. 2004) (citing *Chapman v. California,* 386 U.S. 18, 23-26, 87 S.Ct. 824, 827-29, 17 L.Ed.2d 705 (1967)). There are two different standards of review for harmlessness, "one for nonconstitutional errors and one for errors of constitutional dimension." *United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003). Under federal law, "[u]nder both standards, the burden is on the government to

15

demonstrate that the error was harmless." *United States v. Whitmore*, 359 F.3d 609, 622 (D.C. Cir. 2004).

[¶47]  I would allocate the burden to the State to demonstrate the error was harmless in cases of prosecutorial misconduct involving a nonconstitutional error, although I would not require it to make that showing beyond a reasonable doubt.  Nonconstitutional errors are harmless "unless the error had a substantial influence on the outcome of the proceeding or leaves one in grave doubt as to whether it had such effect." *United States v. Thompson*, 287 F.3d 1244, 1253 (10th Cir. 2002) (citing *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)); *see also Kotteakos*, 328 U.S. at 765, 66 S.Ct. at 1248 ("[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.  It is rather, even so, whether the error itself had substantial influence.  If so, or if one is left in grave doubt, the conviction cannot stand.").

[¶48] There is no dispute in this case that "was she lying" questions constituted prosecutorial misconduct.  Our precedent is clear on that point, and the State concedes it. *Barnes*, 2011 WY 62, ¶ 9, 249 P.3d at 728-29 (It is "misconduct for the prosecutor to cross-examine a defendant using the 'lying' or 'mistaken' technique (*i.e.*, well, then if 'so-and-so' said 'such-and-such,' was he 'mistaken' or 'lying?')") (quoting *Beaugureau v. State*, 2002 WY 160, ¶ 17, 56 P.3d 626, 636 (Wyo. 2002)).  *See also ABA Standards for Criminal Justice Prosecution Function and Defense Function*, Standard 3-5.6(b), at 101 (3d ed. 1993):[12]

> A prosecutor should not knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.

[¶49]  "Prosecutorial misconduct claims are not intended to provide an avenue for tactical sandbagging of the trial courts, but rather, to address gross prosecutorial improprieties that have deprived a criminal defendant of his or her right to a fair trial."  21 Am. Jur. 2d *Prosecutorial Misconduct* § 429, at 545 (2008).  We have defined "prosecutorial

---

[12] We have previously adopted the broad guidelines found in the ABA Standards.  *Moe v. State*, 2005 WY 58, ¶ 20, 110 P.3d 1206, 1214 (Wyo. 2005).

misconduct" as "[a] prosecutor's improper or illegal act (or failure to act), esp. involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Craft v. State*, 2013 WY 41, ¶ 13, 298 P.3d 825, 829 (Wyo. 2013) (quoting *Black's Law Dictionary* 1237 (7th ed. 1999)). We also affirmed that not every "evidentiary error which favors the State would be considered prosecutorial misconduct." *Id.*

[¶50] Other courts have recognized that prosecutorial misconduct is something more than an evidentiary error: *United States v. Walton*, No. ARMY 20011151, 2007 WL 7264761, at *1 (Army Ct.Crim.App. May 3, 2007) ("Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." (citation omitted)); *State v. Ramey*, 721 N.W.2d 294, 299-300 (Minn. 2006) ("conduct the prosecutor should know is improper"); *State v. Inkelaar*, 264 P.3d 81, 93 (Kan. 2011) (Appellate court first determines if prosecutor's questions were proper, then "reviews (1) whether the misconduct was gross and flagrant, (2) whether the misconduct showed ill will on the prosecutor's part, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors.").

[¶51] There is a solid body of Wyoming case law establishing the type of conduct that constitutes prosecutorial misconduct, which typically falls into a handful of types of conduct:

> [W]e have said that prosecutors are not to inject into the trial their personal beliefs as to the credibility of the evidence. *Moe* [*v. State*], 2005 WY 58, ¶ 21, 110 P.3d [1206,] 1214 [(Wyo. 2005)]; and *Lane* [*v. State*], 12 P.3d [1057,] 1065 [(Wyo. 2000)]. We have also repeatedly said that prosecutors should not suggest that a defendant carries any burden of proof. *Id.* at 1066 (*citing Harper v. State*, 970 P.2d 400, 405 (Wyo. 1998)). And it is not appropriate for a prosecutor to argue to a jury that it is the jury's duty to convict the defendant. *Lafond v. State*, 2004 WY 51, ¶ 25, 89 P.3d 324, 332 (Wyo. 2004); *Burton v. State*, 2002 WY 71, ¶ 50, 46 P.3d 309, 321 (Wyo. 2002); *see also* [*United States v.*] *Sanchez*, 176 F.3d [1214,] 1224 [(9th Cir. 1999)].

*Seymore v. State*, 2007 WY 32, ¶ 20, 152 P.3d 401, 410 (Wyo. 2007), *abrogated by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008). It is prosecutorial misconduct: to vouch for the credibility of witnesses, *Fennell v. State*, 2015 WY 67, ¶¶31-44, 350 P.3d 710, 719-26 (Wyo. 2015); to ask the jury to convict a defendant for any reason other than the evidence before it, *Mazurek v. State*, 10 P.3d 531, 542 (Wyo. 2000); to comment upon an accused's silence "when used to the state's advantage either

as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt," *Abeyta v. State*, 2003 WY 136, ¶ 11, 78 P.3d 664, 667 (Wyo. 2003) (citation omitted); to suggest that he has independent knowledge of facts that could not be presented to the jury, *Talley v. State*, 2007 WY 37, ¶ 21, 153 P.3d 256, 263 (Wyo. 2007); to use voir dire to prove the elements of the case or to invite the jury to emotionally sympathize with the victim, *Law v. State*, 2004 WY 111, ¶ 34, 98 P.3d 181, 194 (Wyo. 2004); to "launch personal attacks against defense counsel to inflame the passions and prejudices of the jury," *Lafond v. State*, 2004 WY 51, ¶ 39, 89 P.3d 324, 336-37 (Wyo. 2004) (citation omitted); to ask the jury to place themselves in the position of the victim, *Trujillo v. State*, 2002 WY 51, ¶ 13, 44 P.3d 22, 27 (Wyo. 2002); to intentionally misstate the evidence, *Bustos v. State*, 2008 WY 37, ¶ 9, 180 P.3d 904, 907 (Wyo. 2008); to suggest the jury should consider the defendant's fate rather than focusing on its fact finding responsibility, *Haynes v. State*, 2008 WY 75, ¶¶ 26-28, 186 P.3d 1204, 1210-11 (Wyo. 2008); and to ask "was she lying" questions (*see* majority opinion at ¶17).

[¶52]  While this list is not exhaustive, what we can conclude is that the type of conduct we have found to constitute prosecutorial misconduct all falls into the general category of conduct that the prosecutor knew or should have known would deprive the defendant of the right to a fair trial; and we have had no difficulties in distinguishing between such clearly egregious prosecutorial misconduct and mere evidentiary errors.

[¶53]  I believe the courts are up to the task of identifying prosecutorial misconduct, and that our objective of providing fair trials is best served in cases of prosecutorial misconduct by imposing the burden on the State to demonstrate the error was harmless.  I recognize the difficulty for the prosecutor in this case, who proceeded to ask the improper questions after the district court had overruled defense counsel's objections and seemingly authorized the misconduct.  However, it is the prosecutor's duty to "seek justice, not merely to convict."  *ABA Standards* for *Criminal Justice Prosecution Function and Defense Function*, Standard 3-1.2(c), at 4 (3d ed. 1993).  As the United States Supreme Court has noted with respect to the United States Attorney's prosecutorial duty:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor-indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain

from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)). *See also Lawson v. State*, 2010 WY 145, ¶ 20, 242 P.3d 993, 1000 (Wyo. 2010) ("The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions.") (quoting *Cone v. Bell*, 556 U.S. 449, 451, 129 S.Ct. 1769, 1772, 173 L.Ed.2d 701 (2009)); *Beaugureau*, 2002 WY 160, ¶ 16, 56 P.3d at 634 ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." (citation omitted)).

[¶54] If we held that misconduct could be cleansed by the trial court's erroneous approval, we would be sending the message that misconduct is acceptable if the prosecutor can get away with it. That would be the wrong message. The prosecutor's duty is to seek justice and to win trials only when justice is served. Shifting the burden of demonstrating lack of prejudice to the State in cases of prosecutorial misconduct where appropriate objection has been made is consistent with that duty.