# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 143

OCTOBER TERM, A.D. 2022

November 9, 2022

MICHAEL DAVID LOTT,

Appellant
(Defendant),

v.

S-22-0047

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*

Office of Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames*, Senior Assistant Attorney General; Timothy P. Zintak*, Senior Assistant Attorney General.

**\*** *An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   A jury convicted Michael David Lott of two counts of felony child endangerment and one count of misdemeanor possession of methamphetamine.  He appeals his convictions arguing the prosecutor made two statements that amounted to prejudicial prosecutorial misconduct.  We affirm.

#### ISSUE

[¶2]   Were the prosecutor's comments during opening and closing statements prejudicial to Mr. Lott?

#### FACTS

[¶3]   On May 17, 2021, while on probation for felony child endangerment, Michael Lott submitted a urine sample that tested presumptively positive for methamphetamine.  His probation agent confronted him with the positive test result, and he eventually admitted to recent methamphetamine use.  His probation agent requested assistance from the Mills Police Department to use a K9 officer to conduct a search of Mr. Lott's vehicle.  Corporal Kate Acord and her K9, Archer, were dispatched to the probation and parole office in Mills, Wyoming.

[¶4]   When Corporal Acord deployed Archer around Mr. Lott's vehicle, the dog alerted to the odor of narcotics, but no drugs were discovered during the subsequent search of his vehicle.  His probation agent decided to search Mr. Lott's residence, which he shared with his significant other, Jackie Flores, and their four children: MW, BP, IL, and WL.  Ms. Flores was also on probation, so two probation agents and Corporal Acord went to Mr. Lott's residence.

[¶5]   Ms. Flores and two of the children, IL and WL, were inside the residence.  The older children, MW and BP, were at school.  Ms. Flores was asleep in one of the bedrooms, and Mr. Lott had difficulty waking her up.  Ms. Flores was taken outside, but IL and WL were allowed to remain in the home.  Mr. Lott and Ms. Flores both showed signs of ongoing methamphetamine use, including greyish complexions, low body weight, and poor dental health.

[¶6]   Corporal Acord entered the residence with Archer, who alerted to the presence of narcotics in the bedroom where Ms. Flores was sleeping.  During their subsequent search of that room, the probation agents found a piece of glass/mirror with a small amount of a white crystalline substance on it, which they believed to be methamphetamine.  They also discovered a razor blade and an X-acto knife on the glass, which indicated to them the methamphetamine was ready to ingest.  The probation agents also located the kind of butane torch commonly used to smoke methamphetamine.  The substance was field tested,

1

and it was presumptively positive for methamphetamine. The State Crime Lab later confirmed the substance was methamphetamine.

[¶7] Corporal Acord spoke to Mr. Lott after the methamphetamine was discovered. She advised him of his rights pursuant to *Miranda*. During this conversation, Mr. Lott told Corporal Acord he brought items into the home from his storage unit the previous evening. At first, Mr. Lott claimed he did not know the methamphetamine was in those items. Corporal Acord informed him the methamphetamine was cut with a razor blade and appeared to be ready to ingest. He then claimed he found the methamphetamine in the items that he brought from storage that morning, and he did not "put it away." Mr. Lott made multiple admissions that the methamphetamine was his. He stated it would not be fair to punish Ms. Flores for his actions. Ms. Flores denied any knowledge of the drugs, and her probation agent confirmed her recent urine sample tested negative for controlled substances.

[¶8] The State charged Mr. Lott with four counts of felony child endangerment and one count of misdemeanor possession of a controlled substance. After a two-day jury trial, Mr. Lott was convicted of the child endangerment counts related to IL and WL and the possession count. He was acquitted of the child endangerment counts related to BP and MW. He was sentenced to three-to-five years in prison for both child endangerment counts and 26 days in jail for the possession charge. Those sentences would run concurrently with each other, but consecutive to the sentence in his previous case. This appeal timely followed.

## DISCUSSION

[¶9] Mr. Lott complains about two almost identical statements the prosecutor made during his trial. The first challenged statement occurred at the very beginning of the State's opening statement:

> Ladies and gentlemen, the use of methamphetamine, its storage and possession, are fundamentally inconsistent with the health and safety of small children. What you're going to hear in this case is that on May 17th of this year, Mr. Lott decided to pick methamphetamine over the safety of his children.

The second challenged statement occurred near the end of the State's closing argument:

> Ladies and gentlemen, he's the one that's responsible here. He's the one that chose methamphetamine over his own children, and that is why he is guilty is [sic] of these charges under the evidence.

2

Mr. Lott asserts these comments constituted prosecutorial misconduct because they "served no purpose other than to inflame the passions of the jury." He further asserts "[c]hoosing methamphetamine over his children was not an element of the charged crime," and the prosecutor's comments "tempt[ed] the jury to find Mr. Lott guilty based on their sympathy for the children rather than the evidence." The State argues these remarks did not constitute prosecutorial misconduct, and we should affirm Mr. Lott's conviction because he "cannot explain how the prosecutor's remarks would have influenced the jury's decision."

[¶10] "Prosecutorial misconduct occurs when a prosecutor illegally or improperly attempts to persuade a jury 'to wrongly convict a defendant or assess an unjustified punishment.'" *Armajo v. State*, 2020 WY 153, ¶ 32, 478 P.3d 184, 193 (Wyo. 2020) (quoting *Hartley v. State*, 2020 WY 40, ¶ 9, 460 P.3d 716, 719 (Wyo. 2020)). Mr. Lott "bears the burden of establishing prosecutorial misconduct." *Mendoza v. State*, 2021 WY 127, ¶ 12, 498 P.3d 82, 85 (Wyo. 2021) (quoting *Armajo*, ¶ 32, 478 P.3d at 193). Because Mr. Lott "did not object to either of these statements at trial, we review for plain error." *Id.* (citing *Ridinger v. State*, 2021 WY 4, ¶ 32, 478 P.3d 1160, 1168 (Wyo. 2021)). Under this standard, Mr. Lott must show "(1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice." *Id.* (quoting *Ridinger*, ¶ 33, 478 P.3d at 1168). "Failure to establish each element precludes a finding of plain error." *Klingbeil v. State*, 2021 WY 89, ¶ 40, 492 P.3d 279, 288 (Wyo. 2021) (quoting *Lewis v. State*, 2018 WY 136, ¶ 13, 430 P.3d 774, 777 (Wyo. 2018)). "[O]ur review is focused on whether the error affected [Mr. Lott's] substantial right to a fair trial." *Dixon v. State*, 2019 WY 37, ¶ 40, 438 P.3d 216, 231 (Wyo. 2019) (citing *McGinn v. State*, 2015 WY 140, ¶ 13, 361 P.3d 295, 299 (Wyo. 2015)).

[¶11] The first prong of plain error review is satisfied in this case "because the allegedly improper comments clearly appear in the record." *Ridinger*, ¶ 34, 478 P.3d at 1168. We find this case is one where it is appropriate to "address the prejudice element of the plain error test first, without addressing whether there has been a violation of a clear and unequivocal rule of law." *Klingbeil,* ¶ 43, 492 P.3d at 288 (quoting *Leners v. State*, 2021 WY 67, ¶ 23, 486 P.3d 1013, 1018 (Wyo. 2021)). We review the entire record to determine if Mr. Lott was prejudiced. *Id.* at ¶ 44, 492 P.3d at 289 (quoting *Hathaway v. State*, 2017 WY 92, ¶ 33, 399 P.3d 625, 634 (Wyo. 2017)). When "conducting this review, we are mindful of our 'reluctance to find plain error in closing arguments lest the trial court becomes required to control argument because opposing counsel does not object.'" *Ridinger*, ¶ 33, 478 P.3d at 1168 (quoting *Trujillo v. State*, 2002 WY 51, ¶ 4, 44 P.3d 22, 24 (Wyo. 2002)). Mr. Lott "must establish he suffered material prejudice from the error by demonstrating it is reasonably probable he would have received a more favorable verdict if the error had not been made." *Klingbeil*, ¶ 43, 492 P.3d at 288 (quoting *Leners*, ¶ 24, 486 P.3d at 1018). He "must show prejudice under 'circumstances which manifest inherent

3

unfairness and injustice or conduct which offends the public sense of fair play.'" *Id.*, 492 P.3d at 288–89 (quoting *McGinn*, 2015 WY 140, ¶ 13, 361 P.3d at 299).

[¶12]   "The most important factor in our prejudice analysis is the strength of the State's case." *Shields v. State*, 2020 WY 101, ¶ 40, 468 P.3d 1097, 1108 (Wyo. 2020) (citing *Bogard v. State*, 2019 WY 96, ¶ 72, 449 P.3d 315, 332 (Wyo. 2019)).   Mr. Lott asserts he was prejudiced by the prosecutor's comments because the jury heard evidence implicating Ms. Flores, and the evidence against him "was not so overwhelming that such improper comments would have no effect."   We disagree.

[¶13]   It is undisputed officers found methamphetamine in Mr. Lott's home where two of his children were present.   Although Mr. Lott did not testify at trial, his statements to law enforcement were played for the jury.   In these statements, Mr. Lott repeatedly admitted the methamphetamine was his.   Mr. Lott stated he found the methamphetamine that morning, and he did not "put it away."   Mr. Lott admitted to recent, ongoing methamphetamine use, and he tested positive for methamphetamine on the day of the search.

[¶14]   To convict Mr. Lott of child endangerment, the State did not have to prove it was Mr. Lott, and not Ms. Flores, who had ingested methamphetamine in the home.   Rather, the State had to prove Mr. Lott had the care or custody of the children, and that he knowingly and willfully permitted the children to remain in a dwelling where he knew methamphetamine was being possessed, stored, or ingested. Wyo. Stat. Ann. § 6-4-405(b) (LexisNexis 2021).   The evidence presented by the State proved each of these elements. Mr. Lott knew the methamphetamine was in his home, he did not remove it from the home, and he allowed two of his children to remain in the home with the methamphetamine.   To convict Mr. Lott of possession, the State needed to prove he knowingly and intentionally possessed a controlled substance. Wyo. Stat. Ann. § 35-7-1031(c) (LexisNexis 2021).   Mr. Lott repeatedly admitted to the essential elements of the possession charge.

[¶15]   Considering his admissions and the other evidence presented at trial, Mr. Lott failed to demonstrate a reasonable probability the outcome of his trial would have been different had the prosecutor not made the challenged statements. *Klingbeil,* 2021 WY 89, ¶ 43, 492 P.3d at 288 (quoting *Leners*, 2021 WY 67, ¶ 24, 486 P.3d at 1018).   We conclude the challenged statements did not affect Mr. Lott's substantial right to a fair trial. *Shields*, 2020 WY 101, ¶ 43, 468 P.3d at 1109 (citing *Bogard*, ¶ 18, 449 P.3d at 321).

## CONCLUSION

[¶16]   Mr. Lott failed to establish the prosecutor's statements denied him a substantial right or materially prejudiced his case.   Therefore, he failed to establish plain error occurred, and his convictions are affirmed.

4